[No. 21081. In Bank.—February 28, 1895.]

# THE PEOPLE, RESPONDENT, *v.* C. E. K. ROYCE, APPELLANT.

·106   173
116   396
106   173
133   330
106   173
134   304

CRIMINAL LAW—EMBEZZLEMENT — INSUFFICIENT EVIDENCE — DEPOSIT OF MONEY BY TRUSTEE TO PERSONAL ACCOUNT. — The mere deposit of moneys by the treasurer of a Veterans' Home Association to his personal account, though it may be sufficient to charge him as a trustee with interest in a civil case, is not sufficient evidence to convict him of felonious embezzlement of the moneys so deposited, it not appearing that the treasurer was ever called upon to apply the money to any need of the association, or to make any particular use of it, or to put it in any special place, or that any demand was ever made upon him for the money, and it appearing that he did not clandestinely keep the money, but reported it to the book-keeper of the association, and that the amount of the deposit was entered by the book-keeper upon the ledger of the association.

ID.—EVIDENCE—DESCRIPTION OF DRAFT—ORAL TESTIMONY—IDENTIFICATION.—Where the funds which the defendant is charged with embezzling were the proceeds of a draft drawn by the board of managers of the National Home for Disabled Volunteer Soldiers, upon the assistant treasurer of the United States at the city of New York, payable to the order of the governor of California, which came to the hands of the defendant as treasurer of the Veterans' Home Association, and which was cashed by a bank in San Francisco for the defendant, who caused the proceeds to be deposited to his individual account in the bank, the president of the bank, not having possession of the draft, whether the draft was or was not beyond the jurisdiction of the court, is competent to testify orally to the description of the draft cashed by the bank, for the purpose of identifying it as the draft received by the defendant, and delivered to the bank.

ID.—IMMATERIAL MISNOMER IN RECEIPT.—The fact that the receipt for the draft was signed by the defendant as "Treasurer of the Veterans' Home of California," instead of as "Treasurer of the Veterans' Home Association," does not show a material misnomer, where the evidence establishes that the draft was sent to him for the benefit of the Soldiers' Home at Yountville, and that the "Veterans' Home Association" had established its home at Yountville, and that there was no other home for soldiers at Yountville, and that the proceeds of the draft were entered in the ledger of the "Veterans' Home Association" upon a statement from the defendant that he had received the amount of the draft.

ID.—EVIDENCE OF CHECK DRAWN BY DEFENDANT—NOTICE TO PRODUCE.—Oral evidence may be given of the contents of a check drawn by the defendant and returned to him, regardless of whether he may have been notified to produce it or not; and the fact that notice has been given to him to produce the check before the introduction of proof of its contents, where the demand was not pressed, and the court did not require the defendant to produce it, is not prejudicial error.

Id.—Validity of Draft Drawn Under Act of Congress.—Under the act of Congress of August 27, 1888, for the support of disabled soldiers and sailors of the United States, which provides for quarterly payments to be made by the board of managers of the National Home to the officers of the respective states and territories, a draft drawn by the board of managers of the National Home in favor of the governor of of California for the benefit of the Veterans' Home Association at Yountville, declared by the act of the legislature of March 18, 1889, to be a state home for the support and maintenance of disabled soldiers and sailors of the United States, and to be under the exclusive manage-ment of the state, may be properly received by the Veterans' Home Association as a state agency for the management of the home and the disbursement of all moneys for its support; and the fact that the draft was drawn to the governor of the state instead of to the state treasurer, who was authorized by the law of California to receive it, and was indorsed by the governor instead of the state treasurer, and delivered by the secretary of the governor to the treasurer of the Veterans' Home Association, does not affect the question of its becoming so far the property of the Veterans' Home Association that the defendant may be charged with the embezzlement of the same, in the absence of any action by the government of the United States to reclaim the draft upon the ground that it was issued to the governor without authority of law.

Id.—Title to Money Appropriated by Congress—Aid of Veterans' Home—Trust Fund—Ownership by Veterans' Home Association.— The money appropriated under the act of Congress for the benefit of the Veterans' Home did not belong to the state, and the act of Con-gress imposed no restrictions upon the state as to the channel or agency through which the money should be applied to the purposes designated in the act, and required no appropriation by the state legislature before the money could be used in support of the home; but the money was appropriated by Congress, and could not be diverted by the state; the veterans in the home being the beneficiaries of the fund from that moment it left the United States treasury, and as thus could only receive it through the agency of the Veterans' Home Association, that association was entitled to its custody and use for the purpose for which it was appropriated, and such custody and use required and con-stituted ownership of the fund.

Id.—Estoppel of Defendant—Receipt of Draft as Treasurer.—The defendant having received the draft as treasurer of the association, and received its entire proceeds as such treasurer, he is estopped from say-ing that it was not a valid draft, or that the proceeds were not the moneys of the association, and cannot escape responsibility for embezzle-ment of the proceeds of the draft by saying either that the association was not entitled to the money, or that he was not authorized to receive it as treasurer.

Id.—Proof of Embezzlement.—The question whether an embezzlement is to be proven only through the failure of the agent to account for or to pay over the money received goes only to the evidence, and not to the fact of embezzlement, which may be proved by other evidence before the period for accounting arrives.

ID.—SUBSEQUENT PAYMENT OF MONEYS AFTER EMBEZZLEMENT.—If a defendant has embezzled and converted trust moneys to his own use it cannot affect his guilt in the eye of the law if he afterwards repents and restores the money.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Reddy, Campbell & Metson,* for Appellant.

The court erred in overruling defendant's objection to secondary evidence of the contents of the draft. The fact that it was out of the jurisdiction of the court is immaterial. (*Shaw* v. *Mason,* 10 Kan. 184; Rice on Evidence, 151; *Dickinson* v. *Breeden,* 25 Ill. 186; *De Baril* v. *Pardo* (Pa., April 11, 1887), 8 Atl. Rep. 876; *Kirchner* v. *Laughlin* (N. Mex., Jan. 6, 1892), 28 Pac. Rep. 505.)

*Attorney General W. H. H. Hart,* and *Deputy Attorney General Charles H. Jackson,* for Respondent.

Parol evidence of the contents of the draft was admissible as it was not within the jurisdiction of the court. (*Conish* v. *Territory,* 3 West. Coast Rep. 89; Wharton on Criminal Evidence, 9th ed., secs. 130, 200; *Burton* v. *Driggs,* 20 Wall. 133; *Commonwealth* v. *Morrell,* 99 Mass. 542.) The facts in this case clearly show that the crime of embezzlement was committed. (Am. & Eng. Ency. of Law, "Embezzlement," sec. 3, p. 460; Pen. Code, secs. 504, 506; Bishop on Criminal Law, sec. 397; *People* v. *Treadwell,* 69 Cal. 226; *Rex* v. *Wellings,* 1 Car. & P. 454, 457; *Rex* v. *Beacall,* 1 Car. & P. 312; *Ex parte Ricord,* 11 Nev. 287.)

McFARLAND, J.—In the opinion delivered in Department it is said that "the errors complained of are based upon rulings upon questions of evidence, and upon instructions to the jury"; and, as to such errors and questions, we are satisfied with that opinion. But

a hearing in Bank was ordered on account of a grave doubt whether, under any proper view of the law, there was evidence sufficient to warrant a conviction of the crime charged; and, from further consideration of the case, we are satisfied that there was not such evidence.

The facts shown by the evidence are these: On February 21, 1893, the appellant was treasurer of the Veterans' Home Association, a corporation, and on that day received a certain draft for the benefit of said association for ten thousand three hundred and fifty dollars. On the same day he deposited said draft with the Crocker-Woolworth National Bank of San Francisco, and the amount of the draft was credited to appellant's personal account. The president of the bank testified that he " did not hear him [appellant] give any direction as to whose credit it should be placed," and that " we did not place it to the credit of the association because we have not had any such account on our books." Appellant informed the book-keeper of the association that he had received this draft, and the amount of it was entered by the book-keeper on his ledger of the date of February 21st. On February 24th of the same month the association received from appellant eight thousand three hundred and ten dollars and thirty-five cents of this money; and the charge against appellant is the embezzlement of the balance of said draft, amounting to about two thousand and fifty dollars. What became of this balance does not appear. Appellant may have had it ready to be produced whenever called for. The by-laws of the association required the treasurer to deposit all funds over a certain amount " in such bank as the board [of directors] may direct "; but it does not appear that the board ever made such direction, or named any bank in which the deposits should be made. The by-laws also provide that all moneys in the hands of the treasurer should be " turned over to his successor in office"; but it does not appear that appellant ever had a successor in office. It is also provided in the by-laws that the treasurer shall make

reports of moneys received and expended "to the association at its annual meeting," and also "at each quarterly meeting of the board of directors"; but there is no evidence of any such yearly or quarterly meeting between February, 1893, and the date of the indictment, which was June 2, 1893, or that appellant failed to report said money, or made any report in which it was not mentioned.  There is no evidence that any demand was ever made upon appellant for said money by the association, or by any officer or agent thereof, or by any other person.

The conviction rests, therefore, solely upon the fact that the money was deposited with the bank on February 21st to the personal account of appellant, under the circumstances as above stated.  This was evidently the theory upon which the indictment was based, for it is alleged that the embezzlement was committed on the 24th of February, just three days after said deposit.  It is true, as the court instructed the jury, that the crime charged might have been shown to have been committed at any time before the date of the indictment; but the deposit of the money in the bank on February 21st was the only fact proven upon which the conviction could have been based.  And that fact is not sufficient to support the verdict.  It does not appear that he was ever called upon to apply the money to any need of the association, or to make any particular use of it, or to put it in any special place.  It is true that he drew one or two checks on the Crocker-Woolworth Bank; but it does not appear that he had not private funds there, and the testimony of the president of the bank leaves the impression that he had been keeping an account with that bank.  He may have had the money all that time ready to respond to any demand of the association.  In fact there is no evidence that he did not pay it over to the association.  It is clear that he did not clandestinely keep it, for he reported it to the book-keeper.  No doubt embezzlement may be established, under certain circumstances, without proof

of a demand, as where other evidence clearly shows an appropriation by an employee of his employer's funds, with intent to do so fraudulently and feloniously. But there is no such evidence in the case at bar. It is sometimes held in civil cases that the deposit by a trustee of trust funds to his personal account is sufficient cause for charging him with interest; but such fact alone is not sufficient evidence to convict a man of a felony.

For the reasons above given we are of opinion that a new trial should have been given.

The judgment and order are reversed, and the cause remanded for a new trial.

GAROUTTE, J., VAN FLEET, J., and BEATTY, C. J., concurred.

The following is the opinion above referred to, rendered in Bank on the 14th of August, 1894:

THE COURT.—The indictment charged that appellant was treasurer of the Veterans' Home Association, a corporation organized and existing under the laws of this state, and that on the twenty-fourth day of February, 1893, he embezzled the sum of two thousand and fifty dollars, the property of said association, which came to his hands by virtue of his trust as such treasurer.

The facts, as claimed by the prosecution, were that a certain draft drawn by the board of managers of the National Home for Disabled Volunteer Soldiers, upon the assistant treasurer of the United Sta'es at the city of New York, payable to the order of H. H. Markham, governor of the state of California, for the sum of ten thousand three hundred and fifty dollars, came to the hands of the defendant as such treasurer, on the twenty-first day of February, 1893; that on that day he procured the Crocker-Woolworth National Bank, in San Francisco, to cash the draft, the proceeds of which he caused to be deposited to his individual account in said bank, the amount alleged to have been embezzled being

part of said proceeds. The errors complained of are based upon rulings upon questions of evidence, and upon instructions to the jury.

M. R. Higgins, a witness for the prosecution, testified as follows:

"I am the private secretary of Governor Markham. On or about the month of February of this year Governor Markham received a draft for the Veterans' Home Association, which afterwards came into my hands. I don't know where that draft is now.

" Q. What did you do with that draft?

"A. I forwarded it to Mr. Royce, the treasurer of the Yountville Soldiers' Home, or the Veterans' Home Association of California, or whatever the name is. I forwarded it on the 20th of February, 1893, and think I have Mr. Royce's receipt for it, dated February 21, 1893. I have not seen the draft since. It was received from the National Soldiers' Home Association, through General Franklin, at Hartford, Connecticut, to whom the governor receipted for it. The draft was No. 71228, on the assistant treasurer of the United States, for ten thousand three hundred and fifty dollars for the Yountville Soldiers' Home, for four hundred and fourteen members, from October 1, 1892, to December 31, 1892, three months, at one hundred dollars per annum, no pensions retained, signed by the assistant treasurer of the United States; I don't know his name; indorsed by H. H. Markham."

William H. Crocker, president of the Crocker-Woolworth National Bank, a witness for the prosecution, testified:

" Q. Do you remember whether the bank cashed the draft to Colonel Royce?

"A. Yes, sir, I do. That was on the 21st of February of this year. That draft was deposited by Mr. Royce. The entries of the description of the draft were made in our books, and that day sent for credit to our New York correspondent, the National Park Bank. I have not seen the draft since.

"Q. Now, on whom was that draft drawn"?

Counsel for defendant objected to any description of the draft being given, because it did not appear that it was beyond the jurisdiction of the court.

The witness, in reply to the court, said he meant the city of New York and state of New York.

Counsel then added to his objection that it is not proved that it ever reached the state of New York. The objection was properly overruled.

Conceding that the evidence did not show that the draft was in the state of New York, it did show that it was not in the possession of the witness, and this was sufficient for the purposes for which the evidence was intended. The defendant was not charged with embezzling the draft, but with embezzling certain moneys which he received, being the proceeds of a draft transmitted to him by Mr. Higgins; and the evidence called for was for the purpose of identifying the draft cashed by the bank as the same draft the defendant had that day received from Mr. Higgins.

The object of the evidence was not to determine a contract liability created by the writing and involving a construction of its very language, though it might have furnished evidence that the association was the owner of the proceeds. This, however, was sufficiently shown by other testimony afterwards given, but which will now be noticed as an illustration of the point under discussion.

Mr. Higgins, resuming, testified:

"I sent that check to Mr. Royce by direction of Governor Markham, as his private secretary, and wrote a letter accompanying the draft.

"Copy of letter offered in evidence, and is in the words and figures following, to wit:

"'February 20, 1893.

"'*Colonel E. C. K. Royce, Crocker Building, San Francisco,*

"'Dear Sir: I am directed by the governor to enclose you check No. 71228 of the assistant treasurer of the United States for $10,350, for Yountville Soldiers' Home,

for 414 members, from October first, 1892, to December thirty-first, 1892, three months, at $100 per annum. No pensions retained.     Yours very truly,

"'M. R. HIGGINS, Private Secretary.'

"*The Witness.*  To that letter I received the following reply:

"'SAN FRANCISCO, February 21, 189 .

"'*W. R. Higgins, Esq., Private Secretary, Sacramento, Cal.,*

"'DEAR SIR: I have the honor to acknowledge receipt of check No. 71228, on assistant treasurer of the United States for $10,350, endorsed by H. H. Markham, governor of the state of California, for the Veterans' Home of California.     Very truly yours,

"'C. E. K. ROYCE,

"'Treasurer Veterans' Home of California.'"

It will here be seen that defendant's letter to Mr. Higgins is an admission that, as treasurer of the "Veterans' Home of California," he received the draft described by Mr. Higgins in his letter of transmission, and that he received it for the purposes named; and oral evidence tending to identify that as the draft delivered to the bank is primary and admissible.

In *Commonwealth* v. *Morrell*, 99 Mass. 544, it was said: "The law generally requires the production of the highest evidence of which a thing is capable; and evidence is to be excluded which supposes still ·higher evidence behind in the possession or power of the party.  But the rule is far from universal.  For example, it does not require that a supposed writer shall be called to prove his own handwriting, or that a person whose identity is to be proved shall be produced in court.  The same is true in respect to an animal or any other object the identity of which is to be proved."

In the case above cited a valise had been stolen, and was shipped by express from Massachusetts to Chicago. The express agent attached a tag to the valise marked "B. Anthony, Chicago, Ill.," as requested by the defendant.  The valise was found in Chicago by a detective,

who removed the tag, but at the time of the trial did not find it, and oral evidence was admitted of the writing upon the tag. An exception was reserved. The supreme court said: "In the present case the tag referred to was not a document, but an object to be identified. The words written upon it served to identify it; and the court are of opinion that oral evidence was admissible for this purpose, and that it was not necessary to produce the tag. An inspection of the tag with the written direction upon it might have been more satisfactory to the jury than an oral description of it, and therefore might be regarded as the stronger evidence; but the strength of evidence and the admissibility of evidence are different matters."

In *Singleton* v. *Barrett*, 2 Cromp. & J. 368, Lord Lyndhurst said: "If a person give a receipt, you may prove the payment by parol. I have no doubt that what a party says admitting a debt is evidence, notwithstanding the promise to pay is reduced into writing."

The supreme court of the United States said: "It cannot be laid down as a universal rule that where written evidence of a fact exists all parol evidence of the same fact must be excluded. Suppose the defendant had written a letter to the plaintiff acknowledging the receipt of money; it certainly could not be pretended that the production of this letter would be indispensable, and exclude all parol evidence of the advance." (*Keene* v. *Meade*, 3 Pet. 7.)

In the case at bar suppose that Mr. Higgins, instead of sending the draft to the defendant by mail, had personally handed it to him, and, having taken his written acknowledgment showing that he received it as treasurer, and the amount of it, had gone with him to the bank, and there saw him hand the same draft to Mr. Crocker and obtain credit for the amount of it, could there be any question that such evidence would be competent to prove the identity of the draft delivered to defendant with the one discounted? If so, it was com-

petent for Mr. Crocker to identify it by giving a description of it.

It is also contended that the court erred in overruling defendant's objection to the question, "What was the amount paid to Colonel Royce for that draft"? for the reason that "there was no evidence that the draft belonged to, or was the property of, the Veterans' Home Association," and this because defendant's receipt to Mr. Higgins was signed, "Treasurer Veterans' Home of California." This, it is said, is not the name of the corporation, and shows that the draft did not belong to the Veterans' Home Association. Mr. Crocker also testified: "The only indorsement that we kept were 'C. E. K. Royce, Treasurer Yountville Soldiers' Home,' and 'H. H. Markham.'"

It was shown that at the time of this transaction the defendant was treasurer of the Veterans' Home Association, that the association had established its home at Yountville, and that there was no other home for soldiers at Yountville. Mr. Higgins in his oral testimony said the draft was for the "Veterans' Home Association," and in his letter transmitting the draft to the defendant called it the "Yountville Soldiers' Home," while the defendant signed the acknowledgment of its receipt as "Treasurer Veterans' Home of California." But if this evidence could create any doubt that these names were each used to designate the same association, the testimony of Mr. Horton that in the ledger of the Veterans' Home Association, under date of February 21st, in the handwriting of the witness, there is an entry of ten thousand three hundred and ten dollars and thirty-five cents; that he got the information from which the entry was made from defendant, and that "the amount he gave me as the statement of that warrant was ten thousand three hundred and ten dollars and thirty-five cents." This sufficiently shows that he received it as the treasurer of the "Veterans' Home Association."

It may be here stated that the proceeds of the draft, including a premium of ten dollars and thirty-five

cents, credited to defendant by the Crocker-Woolworth Bank, was ten thousand three hundred and sixty dollars and thirty-five cents, and that defendant deposited to the account of the association, in the First National Bank, his check on the first-named bank for eight thousand three hundred and ten dollars and thirty-five cents, leaving unaccounted for the amount charged in the indictment.

Upon the trial a question arose as to a check drawn by defendant upon the Crocker-Woolworth National Bank, which the bank claimed had been returned to defendant. The prosecution then called upon the defendant to produce the check. Counsel for defendant objected, and took an exception to the district attorney calling upon the defendant to produce evidence against himself. In 3 Russell on Crimes, ninth edition, page 233, it is said: "It has been solemnly determined that notice may be given to the defendant in a criminal prosecution to produce a paper in his possession, and, in case he neglects to produce it, other evidence may be given of it."

The defendant, however, was not required to produce the check. It is argued, however, that such a demand is liable to prejudice the defendant, and *McGinnis* v. *State*, 24 Ind. 503, is cited. In that case the defendant was charged with stealing a United States treasury note of the denomination of ten dollars. Upon appeal it was assigned for error, "that the court erred in admitting parol evidence of the contents of the United States treasury note alleged to have been stolen, no foundation having been laid for such proof, and no notice served upon the defendant to produce the note." It was held that the court could not compel the defendant in a criminal prosecution to produce an instrument in writing, in his possession, to be used against him, but that parol evidence may be given of the contents without such notice having been given. The question whether it would be error to make such demand was not before the court. In the case at bar the demand

was not pressed, and we do not see how the defendant was prejudiced, even if it be conceded that such demand constituted error. The exception was to the demand of the district attorney, and not to any action of the court. If the court had directed the defendant to produce the check, or if the district attorney had commented to the jury upon the defendant's failure to produce the check, a different question would have been presented.

It is also contended that the court erred in refusing to give the following instruction requested by the defendant: "The court instructs you, as matter of law, that the draft or check referred to in the evidence as No. 71228 was void, and of no value, and not the subject of embezzlement."

The same question was made upon the introduction of evidence, where it was said that the draft was void because "issued without any authority of law."

The draft in question was drawn by the board of managers of the National Home, under section 2 of an act of Congress entitled, "An act to provide aid to state or territorial homes for the support of disabled soldiers and sailors of the United States," approved August 27, 1888. (25 Stats. at Large, 450.) This act, after making an appropriation for that purpose, further provided: "And payments to the states and territories under it shall be made quarterly by the said board of managers of the National Home . . . . to the officers of the respective states or territories entitled, duly authorized to receive such payments."

By an act approved March 19, 1889, the Home of the Veterans' Home Association, located at Yountville, Napa county, was recognized and declared to be a "state home for the support and maintenance of disabled soldiers and sailors of the United States," and to be under the exclusive management of the state, "through and by the board of directors of said association, who are hereby constituted a state board of directors for that purpose"; and the state treasurer was authorized and

empowered to receive any and all money to which said home may be entitled under said act of Congress.

It is argued by appellant that this money, "when paid, becomes the money of the state, and goes into its treasury"; that "it is impossible for this corporation to acquire any right to any of the money appropriated by said act of Congress."

We think it clear that the act of 1889, above cited, creates the corporation a state agency for the management of the home and the disbursement of all moneys appropriated for its support, whether by the state or the United States, or donated by individuals or societies. The act does not destroy or impair the existence or powers of the corporation. The state is limited by the act to the one specified mode of control, viz., "through and by the board of directors of said association," and section 4 provides that "this act shall in no wise affect the title to the property of the association."

It is not necessary to decide the question whether the association is the absolute owner of moneys coming into its hands either from the state or the United States. It is authorized to receive moneys for a specified use or purpose. Conceding that it is a trustee of such moneys, its title as such trustee is quite sufficient to support an indictment for the larceny or embezzlement of the same.

It is contended, however, that money cannot be drawn from the treasury of the United States otherwise than in the manner provided by law; and the draft, having been drawn to the order of the governor instead of the state treasurer, was void, and the United States lost nothing; that is, that the money remained the property of the United States, that the Veterans' Home Association was not entitled to it, and its treasurer had not authority to receive the draft or obtain money upon it, and therefore the United States, though the owner of the money, could maintain no action against the association to recover it, nor could the association recover it from the defendant.

The argument is ingenious, but does not aid the appellant. Whether the government was bound to recognize and pay the draft we need not consider. If the government had reclaimed the draft while it was in defendant's possession, upon the ground that it was issued without authority, it would have been a good defense to this prosecution. It was not so reclaimed, but defendant received the draft as the treasurer of the association, and received the entire proceeds; and, having received it as such treasurer, he is estopped from saying that it was not a valid draft, or that the proceeds were not the moneys of the association. If the draft was void upon its face, as contended by counsel, the defendant should not have received it; but, having received it in the name and on behalf of the association, and having received the full amount of money specified in it, he cannot escape responsibility by saying either that the association was not entitled to the money or that he was not authorized to receive it as treasurer. In *Ex parte Hedley*, 31 Cal. 108, it was held that if an agent obtains the money of his principal in the capacity of agent, but *in a manner* not authorized by the agency, he may commit embezzlement of it; and in *People v. Treadwell*, 69 Cal. 226, the defendant was the agent of Hanneke to receive money upon a claim which Hanneke held against Quinn, and received money from Quinn as such agent. Afterwards Hanneke assigned the claim to Wise, and the defendant, without informing Quinn of the assignment, continued to receive payments, receipting therefor in the name of Hanneke; and it was held that he was estopped in law from denying that the money received after the assignment he received as the agent of Hanneke. The court there quoted from Bishop's Criminal Law, section 397 (in 8th ed., vol. 2, sec. 364): "In reason, whenever a man claims to be a servant while getting into his possession by force of this claim the property to be embezzled, he should be held to be such on his trial for the embezzlement. . . . . When a man has received a thing of an-

other under the claim of agency he cannot turn round
and tell the principal asking for the thing: ' Sir, I was
not your agent in taking it, but a deceiver and a scoun-
drel.' " (*People* v. *Treadwell, supra,* p. 235. See also *People*
v. *Gallagher,* 100 Cal. 470, 471.)

What we have said disposes of the defendant's re-
quests numbered 1, 2, 3, 4, 5, and 7. Other instructions
requested by defendant seem to be based upon the
theory that the defendant was only required to report
to the association at stated periods, that the time for
reporting the receipt of this money had not arrived, and
that until he had failed to account for it, or pay it over
to his successor, it could not be shown that he had em-
bezzled it, and that in the mean time he might keep it
in any safe place he saw fit.

It is said in support of these propositions that the
jury should know what the defendant's duties were be-
fore proceeding to determine whether he had violated
his duties or his trust. There are doubtless many cases
where an embezzlement can only be proved through
the failure of the agent to account for or pay over
the money received, but that goes only to the evidence,
and not to the fact, of the embezzlement, which may
be proved by other evidence long before the period for
accounting arrives, and before his successors could be
elected or qualified. *People* v. *Tomlinson,* 66 Cal. 344,
only decides a question of evidence, viz., that the re-
fusal of the agent to pay over the money of his prin-
cipal, when demanded by a person not authorized to
receive it, is not evidence of embezzlement; *non constat*
that he may have in fact embezzled it before the de-
mand, and that it was capable of other and positive
proof.

The twenty-first request was properly refused. It
asked the court to instruct the jury that there was no
evidence that the defendant did not, prior to the find-
ing of the indictment, pay over all moneys received by
him as treasurer of the association.

If the defendant, on the twenty-fourth day of Febru-

ary, embezzled and converted to his own use the moneys of the association, how could it affect his guilt in the eye of the law if he afterwards repented and restored the money? The court correctly charged the jury that: "When proof has been made to the satisfaction of the jury that the defendant did fraudulently appropriate to his own use the moneys of said corporation, contrary to his trust as its treasurer, it is not necessary for the prosecution to show further what disposition has been made of the money by the defendant after such fraudulent appropriation."

It is further contended that the court erred in not granting defendant's motion for a new trial upon the ground that the verdict is contrary to law, because the court instructed the jury "that the treasurer was authorized only to receive moneys appropriated or contributed to the objects of the association, and that the treasurer was not authorized, and it was no part of his trust, to receive moneys to which the association had no right or title, and that if the defendant received money to which the association had no right, title, or claim, it could not be an act done by virtue of his trust."

Here, again, the appellant's theory is that the money belonged to the state, and not to the association. This contention cannot be sustained. The act of Congress imposed no restriction upon the state as to the channel or agency through which the money should be applied to the purposes designated in the act. It required no appropriation by the state legislature before the money could be used in support of the home. The money was appropriated by Congress, and could not be diverted by the state. The veterans in the home were the beneficiaries of the fund from the moment it left the United States treasury, and the state itself could not divert it, and, as the inmates of the home could only receive it through the agency of the association, the association was entitled to its custody and use for the purpose for which it was appropriated, and such custody and use required and constituted ownership. The language of

the act of the legislature of March, 1889, is: "The state treasurer is hereby authorized and empowered to receive any and all moneys *to which said home may be entitled* under the act of Congress, the state thereby treating it as the property of the home, and recognizing the fact that the state is the mere conduit through which it is transmitted to the association."

We find no error which would justify a reversal, and the judgment and order appealed from are affirmed.