### J. B. Livingston et al. v. Fidelity & Dep. Co.

Conversion of Checks Payable to Fictitious Payee by Corporate Officer, an Embezzlement Sufficient to Charge Fidelity Company on Bond, When.

Defalcations by the secretary of a building and loan association which were accomplished by his recommendation of loans to fictitious property holders, the indorsement of the checks issued by the board of directors in pursuance of such purpose with 'such fictitious names, and the subsequent conversion of the funds obtained therefrom to his own use, are embezzlements within the purview of the statute, sufficient to charge a surety company on a fidelity bond applicable only to embezzlement or larceny perpetrated within the scope of an officer's duties.

Error to Cuyahoga common pleas court.

**S. W. Bennett** and **Smith, Taft & Arter,** for plaintiff in error.
**Hoyt, Dustin & Kelley,** for defendant in error.

HENRY, J.

This proceeding in error is prosecuted by the trustees of the Guarantee Savings & Loan Co., against the Fidelity & Deposit Co. of Maryland, to reverse the judgment of the Cuyahoga common pleas court. The parties here stand in the same relation as they stood below. The error complained of is the finding of that court that the petition fails to state facts sufficient to constitute a cause of action.

The corporation of which plaintiffs in error are trustees was organized under the building and loan laws of Ohio, and its officers and employes were bonded by the defendant in error, which is a surety company, organized under the laws of Maryland.

Among the officers and employes whose fidelity was thus guaranteed by the blanket bond issued by the surety company to the local corporation, was the latter's secretary, Jacob A. Blodt, who served as such for five years, beginning June 1, 1896, and ending August 8, 1901, and who, after swindling his company to the extent of $209,100, committed suicide. The action below was commenced to recover, on his last annual bond, the full limit thereof, $10,000. The provisions of the bond make it applicable to Blodt's defalcation, if it amounts to embezzlement or larceny, and was perpetrated within the direct scope of his duties as secretary; but not otherwise.

Blodt's plan of operation was to buy cheap vacant lots in Cleveland under divers fictitious names, and in the same names to apply to his company for loans wherewith to erect buildings thereon. His board

Livingston v. Fidelity & Dep. Co.

of directors granted the loans, on his recommendation, and issued checks therefor to the order of the fictitious applicants. Blodt was entrusted with these checks, and it was his duty to see to their application to the intended purposes, according to the usual custom of building and loan associations. Blodt, however, collected or deposited the checks for his own behoof, after endorsing them in the names of the fictitious payees.

The surety company claims that this scheme did not amount to either a larceny or an embezzlement of either checks or moneys.

It is argued that the checks were worthless, because the payees were fictitious, and that therefore such checks could not be the subject of either crime. And it is further argued that under Lan. R. L. 6281 (B. 3836-4), the treasurer was the exclusive custodian of the association's moneys, and that such moneys could not lawfully be transferred from his custody to that of the secretary. There could be, it is claimed, no embezzlement of such moneys by the secretary under Lan. R. L. 10449 (R. S. 6842), because they did not "come into his possession by virtue of his appointment or employment as such officer," neither was there a larceny of such moneys under the rule laid down in *Kellogg* v. *State,* 26 Ohio St. 15.

It is not clear that Blodt might not lawfully have had possession of moneys of the association, if transferred to him from the treasury by the board of directors for specific purposes, in view of the broad provisions of the last two paragraphs Lan. R. L. 6279 (B. 3836-3), and in view of the equally broad implications of Lan. R. L. 6302 (B. 3836-25). But a majority of the court are unwilling to hold, under the facts alleged in the petition, that such a transference of the mere custody of moneys actually took place in this case. There can be no doubt, however, that the checks were lawfully in his possession as secretary. Were they of value, within the meaning of Lan. R. L. 10449 and 10450 (R. S. 6842 and 6843) defining embezzlement?

*People* v. *Royce,* 106 Cal. 173 [37 Pac. Rep. 630], is a similar case, in this, that the defendant there was convicted of embezzlement of a draft which was claimed by him, in his defense, to have been void and without value, because money was thereby sought to be made payable, out of the treasury of the United States, to a person other than the one authorized by law to receive payment. But the accused, having actually obtained the cash thereon, converted it to his own use; and the court held that he was thereby estopped from saying that it was not a valid draft.

We therefore hold that, under the like circumstances set forth in the petition below, the checks, which Blodt cashed, or collected, and

Cuyahoga County.

converted to his own use, were things of value, and that he was guilty of embezzlement, within the meaning of our statutes, and of the bond sued on in this case.

The demurrer to the petition should have been overruled, and the judgment below is therefore reversed and the cause remanded.