[Crim. No. 184.   Third Appellate District.—September 17, 1912.]

## THE PEOPLE, Respondent, v. WILLIAM T. BLAIR, Appellant.

CRIMINAL LAW—EMBEZZLEMENT—TEST OF CRIME—FRAUDULENT APPROPRIATION OF MONEY—DEMAND—TEST UNCHANGED.—The test of the crime of embezzlement is whether the evidence shows clearly a fraudulent appropriation by the defendant of the money involved; and proof of a demand is not required when the evidence otherwise shows the fact of such fraudulent appropriation.   It is only in the absence of other sufficient proof of a fraudulent appropriation that a demand may be necessary to fix the fact of the fraudulent appropriation; but the test of the crime is not thereby altered, but always is, does the whole evidence establish the crime charged, that is, a fraudulent appropriation as charged in the indictment.

ID.—INTRUSTMENT OF MONEY TO PURCHASE FARM—WANTON VIOLATION OF TRUST—EMBEZZLEMENT—SUPPORT OF VERDICT.—Where it appears that the money was intrusted by an aged widow to a servant who had been in her employ, with which to buy her a farm within certain states named, and the evidence shows a wanton violation of the trust, and an intention to conceal and embezzle the money, it is held sufficient to support a verdict convicting him of that crime..

ID.—DISPOSITION OF RESIDUE OF MONEY AFTER ARREST FOR ·CONCEALMENT—EVIDENCE.—Evidence was admissible to show the disposition of the residue of the money in the hands of the defendant after the arrest in order to conceal it, not for the purpose of showing an independent embezzlement after the arrest, but as relating back and showing his intention to embezzle all of the money if he did embezzle it before the arrest.

ID.—REQUESTED INSTRUCTION—ERROR AS TO NECESSITY OF DEMAND TO CONSTITUTE EMBEZZLEMENT—MODIFICATION QUALIFYING WITHOUT CURING ERROR.—A requested instruction which assumes that if the money was intrusted to the defendant to purchase a farm, and neither the time nor place was fixed for the purchase, and that before his arrest no demand had been made for the return of the money or the purchase of the farm, he could not be found guilty of embezzlement, erroneously ignores the settled doctrine as to what is the "test" of embezzlement, and would have been properly refused. A modification of the same, which inserts the qualifying phrase, "and that an unreasonable time had not elapsed after defendant received the money, up to the time of the arrest," qualifies but does not cure the error.

ID.—PROPER INSTRUCTION AS TO EMBEZZLEMENT BY AGENT.—The court properly instructed the jury that "one who acts as the agent of an-

other and in such capacity is intrusted with and receives into his care any money for the use of another person, and fraudulently appropriates the same to his own use, or to any use or purpose not in the due and lawful execution of his trust, is guilty of embezzlement, and in this case if you find from the evidence to a moral certainty, and beyond a reasonable doubt, that the defendant did unlawfully, fraudulently and feloniously convert, embezzle and appropriate the money mentioned in the information, or any part thereof, to his own use, and contrary to his trust as such agent, then your verdict must be guilty."

Id.—Effect of Conflict Between Modified Instruction and Correct Instruction—Error to Defendant's Advantage.—The effect of the modified instruction was to weaken the force of the correct instruction to defendant's advantage, of which he cannot complain. It is held that, considering the entire record, it cannot be said that any error which crept into the modified instruction has resulted in a miscarriage of justice.

APPEAL from a judgment of the Superior Court of Napa County, and from an order denying a new trial. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Henry Crass, and L. E. Johnston, for Appellant.

U. S. Webb, Attorney General, and J. Chas. Jones, Deputy Attorney General, for Respondent.

CHIPMAN, P. J.—Defendant was tried and convicted on an information charging him with the crime of embezzlement, committed at the county of Napa about June 19, 1911. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

It is contended: First, that the evidence fails to show that defendant was guilty of embezzlement; and, second, that the court erred in refusing to give the only instruction requested by defendant and in giving it as modified by the court.

1. Upon the first point defendant contends that the complaining witness, Mrs. Booker, "intrusted the sum of $3,500 to defendant with which to buy a farm or ranch. No time was specified within which the purchase was to be made; no place was specified as to where the ranch or farm was to be purchased. The amount defendant was to pay for the ranch

was not mentioned, and no demand was ever made upon defendant that he return the money or carry out the trust.'' The evidence was that no demand had been made upon defendant for a return of the money; that defendant received the money about June 19, 1911, deposited it in a bank in Napa and, about that date, drew it out and departed from Napa with it and was not afterward seen by Mrs. Booker until after his arrest, in January, 1912. It does not appear that Mrs. Booker had any opportunity to make a demand upon defendant otherwise than by letter, and, as he told her in a letter written by him July 20, 1911, from some place in Arkansas, that he was about ''to start to Sacramento,'' and that he wanted her ''to leave off writing until'' she heard from him, there was no opportunity after that date even by letter.

But upon this point we think defendant is in error in his contention that a demand was necessary in order to make the conversion of the money embezzlement. The law is very well stated in the case of *People* v. *Hatch,* 163 Cal. 368, [125 Pac. 907], wherein the opinion refers to at least two of the cases relied upon by defendant. We quote:

''It is claimed that no demand was shown to have been made upon defendant for the money involved with which it was his duty to comply.

''In the first place, the guilt or innocence of defendant does not necessarily depend upon the question whether or not any demand has been made upon him for the money involved. The real question is, Does the evidence show a fraudulent appropriation by defendant of the money involved? Neither *People* v. *Page,* 116 Cal. 387, [48 Pac. 326], nor *People* v. *Royce,* 106 Cal. 173, [37 Pac. 630, 39 Pac. 524], lays down the rule that a demand is necessary as a matter of law to constitute an embezzlement.

''In each of these cases the court discussed the evidence, and held that it was insufficient to support a verdict of guilty, and in so doing adverted to the fact that no demand had been made, and in each case also adverted to the fact that it had not been shown that the defendant had in fact or at all appropriated the money involved to his own use, or that he did not have it on hand at all times to meet any demand if one had been made. 'No doubt embezzlement may be established under certain circumstances without proof of a demand, as

where other evidence clearly shows an appropriation by an
employee of his employer's funds, with intent to do so fraudu-
lently and feloniously.' (*People* v. *Royce,* 106 Cal. 173, [37
Pac. 630, 39 Pac. 524].)  In some cases, in the absence of
other sufficient proof, a demand may be necessary to fix the
fact of the fraudulent appropriation; but the real test always
is, does the whole evidence establish the crime charged, that
is, a fraudulent appropriation as charged in the indictment.
(*People* v. *Ward,* 134 Cal. 301, [66 Pac. 372].)''

It thus appears that it is only in the absence of other suffi-
cient proof that a demand may be necessary to fix the fact
of the fraudulent appropriation, the true test being, ''Does
the whole evidence establish the crime charged?''

The complaining witness, Mrs. Booker, is a widow of
seventy-five years of age, and, in the month of March or April,
1911, resided at St. Helena; she hired defendant to work for
her at that time and later, while in her service, she intrusted
$3,500 to defendant for the purpose of purchasing a farm,
mentioning Kansas, Arkansas, Missouri and Colorado as the
states in which he was to make the purchase.  The evidence
would justify the inference that Mrs. Booker's understand-
ing was that defendant would purchase a ranch for her and
for her support while she lived and to go to defendant at her
death.  Defendant journeyed through these states and wrote
Mrs. Booker four letters, which were introduced in evidence.
One of them was dated Cord, Arkansas, June 28th, in which
he speaks of liking Colorado better than Arkansas.  The next
letter was dated at the same place, July 8, 1911, acknowledg-
ing the receipt of a letter from Mrs. Booker and informs her
that he may come to Napa.  The third letter was dated
''Cabool, July 20,'' and informs Mrs. Booker that he will
start for Sacramento soon, and tells her to ''leave off writ-
ing'' to him until she hears from him.  The last letter is
dated Holden, Missouri, August 8th, in which defendant
wrote: ''Mrs. Booker, Dear Ma: I will be in Sacramento, Cal.,
soon then I will write and tell you what to do.  I want to see
you enjoy life.  I will locate in Ogden, Utah, on Salt Lake
as that is the best climate I have been in since I left you.
Now cheer up and don't think the time long for I have had
a hard time.  Good bye.  As ever, Your Will.''  We next
hear of defendant under arrest, in January, 1912, at Camas, a

small town near Vancouver, state of Washington, and of his extradition for the offense here charged. Of his movements after August, 1911, nothing appears except as shown by his own statements to the arresting officers and the officers sent from this state. To one of these he stated that he came to Napa and tried to find Mrs. Booker and from there he went to St. Helena. No account of his subsequent whereabouts or what he was doing appears. He did not find Mrs. Booker and she did not know of his return, and whether he made any effort to find her is not shown. Defendant introduced no evidence. To the officer who brought him back from Vancouver he stated: That when arrested he had $2,050, in a belt around his body, of the money intrusted to him by Mrs. Booker; that he went to a bank with the sheriff who arrested him and deposited the money; that he "put one over on Cressep, the sheriff of Clark county, in reference to the possession of the money,'' which he further explained was done by giving a lawyer at Vancouver checks for all of this money. Concerning the intrusting of the money to him by Mrs. Booker he said: "She called him in the house and gave him fifty dollars, two twenty dollar bills and a ten dollar bill, then subsequently, she gave him $3,500 and he was to buy a ranch some place in the east, he was to buy a ranch and they were going to be married when he got the ranch. When he said that I said, 'What did you do with the rest of the money? You only had $2,000; that was $1,500 shy?' Well, he said if he could get to talk with Mrs. Booker fifteen minutes he could settle the matter all right. He said he had property that he bought for a thousand dollars some place, when he could see Mrs. Booker he could explain it. That was in substance the conversation we had with reference to the money.''

Objection was made to testimony relating to what defendant did with the money after his arrest. The court, correctly, we think, admitted the evidence, not to show embezzlement of the money subsequent to his arrest, but as "relating back and showing his intention if he did embezzle it before.''

We think there was sufficient evidence to justify the jury in concluding that the crime of embezzlement was committed by defendant. If he returned to Napa at all, of which we know only from what he said to the extradition officer, it is inconsistent with any theory of innocence that he should make no

effort to find his benefactress while at her place of residence or to communicate with her in any way, but on the contrary, should betake himself to another state where she would be the least likely to know anything about him. He severed all connection with her in August, 1911, and wrote her to cease writing to him, and falsely led her to expect he would meet her in Sacramento in a short time. The case exhibits a wanton violation of the trust reposed in him by this old woman, whose examination as a witness shows her to have been a person easily victimized through her own credulity.

2. The defendant requested the following instruction, which was given with modifications indicated in italics:

"I instruct you, gentlemen of the jury, that if you shall find from the evidence that on or about the nineteenth day of June, 1911, the complaining witness, Mrs. Caroline Booker, instructed (intrusted?) the defendant William T. Blair with the sum of $3,500, lawful money of the United States of America, upon the express trust or agreement that said Blair was to use said moneys for the purpose, and none other, of purchasing a farm or ranch for said Mrs. Booker, but that no time was fixed as to when said purchase was to be made or place designated where said ranch or farm was to be purchased, *it was incumbent upon defendant to perform said contract within a reasonable time after receiving said money, and you are the judges under all of the circumstances shown in this case what would have been a reasonable time within which to purchase such farm.* And if you shall further find that neither Mrs. Booker, nor anyone in her behalf, ever demanded of defendant before the date of his arrest that he return said sum of money to her or that he forthwith purchase said ranch or farm, *and that an unreasonable time had not elapsed after defendant received the money up to the time of his arrest,* then I instruct you that the failure of defendant to purchase such ranch or farm, if you shall find from the evidence that defendant did fail to make such purchase, or his failure to repay or return to Mrs. Booker said money prior to the date of his arrest, is not sufficient to charge him with embezzlement, and your verdict must be not guilty."

As requested, the instruction assumed that if the money was intrusted to defendant to purchase a farm, and neither the time nor the place was fixed for the purchase, there could be

no embezzlement unless before his arrest there had been a demand made upon him for the return of the money or the purchase of the farm. This assumption ignores the doctrine clearly laid down in the Hatch case, *supra,* that "the real test always is, does the whole evidence establish the crime charged, that is, a fraudulent appropriation as charged in the indictment." The court would have been justified in refusing the instruction.

The court correctly instructed the jury as follows: "I instruct you that one who acts as the agent of another and in such capacity is intrusted with and received into his care any money for the use of another person and fraudulently appropriates the same to his own use or to any use or purpose not in the due and lawful execution of his trust, is guilty of embezzlement; and in this case if you find from the evidence to a moral certainty and beyond a reasonable doubt that the defendant did unlawfully, fraudulently and feloniously convert, embezzle and appropriate the money mentioned in the information, or any part thereof, to his own use and contrary to his trust as such agent, then your verdict must be guilty."

If the modified instruction had any effect, its tendency was to weaken the force of the correct instruction given by the court and to defendant's advantage. Defendant's criticism is that the instruction made the guilt or innocence of defendant to turn upon the question whether he had performed his trust within a time found by the jury to have been "reasonable" or "unreasonable," and that the question of time was a false quantity. Conceding this, still it gave defendant an added chance for escape of which he cannot complain. However, after a consideration of the entire record, including the evidence, we cannot say that the error which crept into the instruction complained of, if it be error, has resulted in a miscarriage of justice. (Amendment to the Constitution, sec. 4½, art. VI.)

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 15, 1912.