[Sac. No. 7393.   In Bank.   June 27, 1962.]

NEAL CHESTER JONES, Petitioner, v. THE SUPERIOR COURT OF NEVADA COUNTY et al., Respondents.

C. E. Tindall and Kern E. Tindall for Petitioner.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, Edsel W. Haws, Deputy Attorney General, Harold A. Berliner, District Attorney (Nevada), and Harold F. Wolters, Deputy Distict Attorney, for Respondents.

TRAYNOR, J.—On October 30, 1961, the day set for his trial on the charge of rape, petitioner filed a motion for continuance and an affidavit in which he alleged that he was and for a long time had been impotent and that he needed time

to gather medical evidence including medical reports in connection with injuries he suffered in 1953 and 1954. The motion was granted. On November 3 the district attorney filed a motion for discovery, requesting petitioner and his attorney to make available to the prosecution: (1) the names and addresses of any and all physicians and surgeons subpoenaed to testify on behalf of petitioner with respect to certain injuries suffered by him in 1953 and 1954 and bearing on the question of whether or not petitioner is impotent; (2) the names and addresses of all physicians who have treated petitioner prior to the trial; (3) all reports of doctors or other reports pertaining to the physical condition of petitioner relating to said injuries and bearing on the question whether petitioner is impotent; and (4) all X-rays of petitioner taken immediately following the 1953 and 1954 injuries. The court granted the motion over petitioner's objection. Petitioner seeks a writ of prohibition to restrain enforcement of the trial court's order.

■ Discovery is designed to ascertain the truth (see *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 375-377 [15 Cal.Rptr. 90, 364 P.2d 266]) in criminal as well as in civil cases. (*People* v. *Estrada,* 54 Cal.2d 713, 716 [7 Cal.Rptr. 897, 355 P.2d 641]; *People* v. *Cooper,* 53 Cal.2d 755, 768-771 [3 Cal.Rptr. 148, 349 P.2d 964]; *Cash* v. *Superior Court,* 53 Cal.2d 72, 74-76 [346 P.2d 407]; *Funk* v. *Superior Court,* 52 Cal.2d 423, 424-425 [340 P.2d 593]; *People* v. *Durazo,* 52 Cal.2d 354, 356 [340 P.2d 594]; *People* v. *Chapman,* 52 Cal. 2d 95, 98-99 [338 P.2d 428]; *People* v. *Cartier,* 51 Cal.2d 590, 594 [335 P.2d 114]; *People* v. *Williams,* 51 Cal.2d 355, 357-359 [333 P.2d 19]; *Tupper* v. *Superior Court,* 51 Cal.2d 263, 265 [331 P.2d 977]; *Vance* v. *Superior Court,* 51 Cal.2d 92, 93 [330 P.2d 773]; *Mitchell* v. *Superior Court,* 50 Cal.2d 827, 829 [330 P.2d 48]; *Priestly* v. *Superior Court,* 50 Cal.2d 812, 819 [330 P.2d 39]; *People* v. *McShann,* 50 Cal.2d 802, 806-808 [330 P.2d 33]; *People* v. *Carter,* 48 Cal.2d 737, 752-753 [312 P.2d 665]; *Powell* v. *Superior Court,* 48 Cal.2d 704, 706-709 [312 P.2d 698]; *People* v. *Riser,* 47 Cal.2d 566, 585-588 [305 P.2d 1].) In *People* v. *Riser, supra,* pages 585-586, we noted that ''Originally at common law the accused in a criminal action could not compel production of documents or other evidence in the possession of the prosecution. [Citations.] Production was denied before trial on the ground that to compel the prosecution to reveal its evidence beforehand would enable the defendant to secure perjured testimony and

fabricated evidence to meet the state's case. It was felt, furthermore, that to allow the defendant to compel production when the prosecution could not in its turn compel production from the defendant because of the privilege against self incrimination would unduly shift to the defendant's side a balance of advantages already heavily weighted in his favor. [Citations.] . . . ■ Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and in particular it has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits. To deny flatly any right of production on the ground that an imbalance would be created between the advantages of prosecution and defense would be to lose sight of the true purpose of a criminal trial, the ascertainment of the facts. [Citations.]'' ■ Similarly, absent the privilege against self-crimination or other privileges provided by law, the defendant in a criminal case has no valid interest in denying the prosecution access to evidence that can throw light on issues in the case. ■ Nor is it any less appropriate in one case than in the other for the courts to develop the rules governing discovery in the absence of express legislation authorizing such discovery.

It is contended, however, that the cases permitting discovery by defendants are not based on the power of the court to develop rules of procedure but on the constitutional mandate that defendants be given fair trials, and that since there is no constitutional mandate to extend discovery to the prosecution, the court should not do so in the absence of enabling legislation. There might be merit in these contentions had defendants been permitted discovery only when necessary to insure due process of law. ■ Pretrial discovery in favor of defendants, however, is not required by due process. (See 18 U.S.C. § 3500; *Palermo* v. *United States,* 360 U.S. 343, 349 [79 S.Ct. 1217, 3 L.Ed.2d 1287]; *Campbell* v. *United States,* 365 U.S. 85, 86 [81 S.Ct. 421, 5 L.Ed.2d 428]; *People* v. *Riser,* 47 Cal.2d 566, 585 [305 P.2d 1]; Louisell, *Criminal Discovery: Dilemma Real or Apparent?,* 49 Cal.L.Rev. 56, 73-74.) Accordingly, when this court permitted discovery in advance of as well as at the trial (*Powell* v. *Superior Court,* 48 Cal.2d 704 [312 P.2d 698]; *Funk* v. *Superior Court,* 52 Cal.2d 423 [340 P.2d 593]; *Cash* v. *Superior Court,* 53 Cal.2d 72 [346 P.2d

407]), it was not acting under constitutional compulsion but to promote the orderly ascertainment of the truth. That procedure should not be a one-way street. (*People* v. *Cooper,* 53 Cal.2d 755, 771 [3 Cal.Rptr. 148, 349 P.2d 964]; *Powell* v. *Superior Court,* 48 Cal.2d 704, 707 [312 P.2d 698].)

Petitioner contends, however, that the discovery order in this case violates the privilege against self-crimination (Cal. Const., art. I, § 13; Pen. Code, §§ 688, 1323, 1323.5) and the attorney-client privilege. (Code Civ. Proc., § 1881, subd. 2.)

It is settled that a defendant in a criminal case may not be compelled to testify (Pen. Code, § 1323.5), and it has generally been held that he may not be required to produce private documents in his possession. (*People* v. *Royce,* 106 Cal. 173, 184-185 [37 P. 630, 39 P. 524]; *People* v. *Jackson,* 24 Cal.App.2d 182, 198 [74 P.2d 1085]; *People* v. *Rubens,* 11 Cal.App.2d 576, 585 [54 P.2d 98, 1107]; 8 Wigmore on Evidence [McNaughton rev. 1961] § 2263, pp. 379-380.) Unlike an ordinary witness, a defendant need make no showing that the answer or document sought may be incriminating (*People* v. *Talle,* 111 Cal.App.2d 650, 666-667 [245 P.2d 633], and cases cited), for the very fact that the prosecution seeks it, establishes that in the prosecution's view it may be incriminating. (See 8 Wigmore on Evidence [McNaughton rev. 1961] § 2260, p. 369.) When the prosecution has ample evidence of the existence, identity, and authenticity of documents in the defendant's possession and thus does not need to rely on his knowledge to locate and to identify them or on his testimony to authenticate them, it may be that his implied admission alone that the documents produced were those he was ordered to produce would involve too trivial a degree of incrimination to justify invoking the privilege. (See Maguire, Evidence of Guilt, pp. 22-23; Meltzer, *Required Records, The McCarran Act, and the Privilege Against Self-Incrimination,* 18 U.Chi. L.Rev. 687, 699-701.) We are not confronted with such a case, however, for the prosecution has no independent evidence of the existence of the reports and X-rays it seeks or the names of the witnesses who have treated or will examine petitioner and who could authenticate any reports or X-rays they have made or will make. The prosecution seeks more than to require petitioner tacitly to admit that the materials are those requested; it seeks the benefit of his knowledge of the existence of possible witnesses and the existence of possible reports and X-rays for the purpose of preparing its case against him.

Moreover, insofar as the prosecution seeks reports

made or to be made by physicians to whom petitioner "was sent by his attorney for examination, as distinguished from advice and treatment," it would violate the attorney-client privilege, for such reports are communications from petitioner to his attorneys through such physicians. (*San Francisco Unified School Dist.* v. *Superior Court,* 55 Cal.2d 451, 455 [11 Cal. Rptr. 373, 359 P.2d 925] ; *City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227, 236-238 [231 P.2d 26, 25 A.L.R.2d 1418].)

The prosecution, however, is entitled to discover the names of the witnesses petitioner intends to call and any reports and X-rays he intends to introduce in evidence in support of his particular affirmative defense of impotence. A number of states have statutes permitting or requiring discovery in criminal cases of the identity of witnesses who are to be called to testify for a defendant in connection with a particular defense, such as an alibi. (See Louisell, *Criminal Discovery: Dilemma Real or Apparent?,* 49 Cal.L.Rev. 56, 61, n. 13; 6 Wigmore on Evidence [3d ed.] § 1855 (b), pp. 418-420; 30 A.L.R.2d 480.) Although such discovery may require a defendant to disclose information that would lead to effective rebuttal of his defense, these statutes have uniformly been upheld against the claim that they violate the privilege against self-crimination. (*State* v. *Smetana,* 131 Ohio St. 329 [2 N.E.2d 778] ; *State* v. *Thayer,* 124 Ohio St. 1, 4 [176 N.E. 656, 75 A.L.R. 48] ; *People* v. *Shulenberg,* 279 App.Div. 1115 [112 N.Y.S.2d 374, 375] ; *People* v. *Rakiec,* 260 App.Div. 452 [23 N.Y.S.2d 607, 612-613] ; *People* v. *Schade,* 161 Misc. 212 [292 N.Y.S. 612, 615-619] ; *State* v. *Kopacka,* 261 Wis. 70, 75-76 [51 N.W.2d 495, 30 A.L.R.2d 476].) The identity of the defense witnesses and the existence of any reports or X-rays the defense offers in evidence will necessarily be revealed at the trial. The witnesses will be subject to cross-examination, and the reports and X-rays subject to study and challenge. Learning the identity of the defense witnesses and of such reports and X-rays in advance merely enables the prosecution to perform its function at the trial more effectively. Thus, "the alibi statutes do not infringe on the privilege against self-incrimination. Rather, they set up a wholly reasonable rule of pleading which in no manner compels a defendant to give any evidence other than that which he will voluntarily and without compulsion give at trial. Such statutes do not violate the right of a defendant to be forever silent. Rather they say to the accused: If you don't intend to remain silent, if you

expect to offer an alibi defense, then advance notice and whereabouts must be forthcoming; but if you personally and your potential witnesses elect to remain silent throughout the trial, we have no desire to break that silence by any requirement of this statute." (Dean, *Advance Specification of Defense in Criminal Cases,* 20 A.B.A.J. 435, 440.)

Insofar as the trial court's order herein requires petitioner to reveal the names and addresses of witnesses he intends to call and to produce reports and X-rays he intends to introduce in evidence to support his defense of impotence, it does not violate the privilege against self-crimination. Nor to this extent does it violate the attorney-client privilege. It simply requires petitioner to disclose information that he will shortly reveal anyway. Such information is discoverable. The order, however, is not limited to the discovery of such information, and therefore cannot be enforced in its present form.

Let a peremptory writ of prohibition issue restraining the trial court from proceeding in a manner inconsistent with the views expressed herein.

Gibson, C. J., McComb, J., and White, J., concurred.

PETERS, J., Concurring and Dissenting.—I agree with the majority opinion insofar as it holds that a "peremptory writ of prohibition issue restraining the trial court," but I dissent from the holding that the trial court may permit the prosecution "to discover the names of the witnesses petitioner intends to call and any reports and X-rays he intends to introduce in evidence in support of his particular affirmative defense of impotence." This last-quoted holding, in my opinion, violates the fundamental constitutional rights of defendant.

The Constitution of California (art. I, § 13) provides that "No person shall . . . be compelled, in any criminal case, to be a witness against himself; . . ." but his failure to explain "the case against him" may be commented on by court and counsel. Section 688 of the Penal Code provides "No person can be compelled, in a criminal action, to be a witness against himself; . . ." Section 1323 of the Penal Code states the same thought in the following language: "A defendant in a criminal action or proceeding can not be compelled to be a witness against himself; . . ." Section 1323.5 provides that in all criminal proceedings "the person accused or charged shall, at his own request, but not otherwise, be deemed a competent witness."

These guarantees are fundamental, unlimited, and absolute. They are discussed at length in *People* v. *Talle,* 111 Cal.App. 2d 650 [245 P.2d 633]. Until today these principles have never been challenged successfully. In that case it was stated that (p. 664): "under these constitutional and statutory provisions the right of the defendant to remain silent is absolute except that the prosecution may comment if the defendant fails 'to explain or to deny by his testimony any evidence or facts *in the case against him.*' Thus, by express constitutional and statutory limitation comment is allowed only when the prosecution has first made out a case that the accused can or should deny. At the inception of the case, obviously, the prosecution has developed no facts at all that the accused can deny. As was said in *People* v. *Sawaya,* 46 Cal.App.2d 466, 471 [115 P.2d 1001]: 'The fact that the constitutional provision provides that in a criminal case, whether or not the defendant testifies, his failure to explain or deny by his testimony any evidence or facts in the case against him may be commented upon by the court or counsel and may be considered by the court or the jury, does not deprive a defendant of his right to stand mute, nor does it release the prosecution of the burden of establishing his guilt beyond a reasonable doubt, and by competent and legal evidence.'

"Under a proper interpretation of these quoted provisions, an accused has the right to stand mute, clothed in the presumption of innocence, until the prosecution, at the trial, has made out a prima facie case against him. Until that has been done, it is improper to even comment on his silence." Cases are cited holding that it is even improper to compel the defendant to give his name or address, or to be compelled to assert before the jury his constitutional right to be silent. Reference is made to the case of *United States* v. *Housing Foundation of America,* 176 F.2d 665, written by Judge Goodrich, who held (p. 666) that compelling a defendant to give evidence against himself "is so fundamental an error that the judgment must be reversed. . . . The error made arises from confusing the privilege of any witness not to give incriminating answers with the right of the accused not to take the stand in a criminal prosecution against him."[1]

Compelling the accused to give testimony prior to the establishment of a prima facie case against him is described in *Talle* (p. 667) as a "flagrant, shocking and prejudicial inva-

---

[1] This same confusion is apparent in the majority opinion.

sion of appellant's constitutional rights," a description equally applicable to the instant case. At page 676, the court, after again pointing out that the accused has a "right to remain silent" until a prima facie case has been established against him, stated "Those accused of crime are not required to cooperate with the prosecution. The prosecution has the duty of proving that the accused is guilty beyond a reasonable doubt, and until that is done, the accused may remain silent." The court pointed out that the argument that otherwise the guilty may go free is no justification for a violation of those constitutional rights. It used the following language directly applicable to the instant case (p. 678): "Prosecuting those accused of crime is often a tedious and tiresome process. But this is the process required by law, and short cuts cannot be tolerated. Constitutional guarantees are not arbitrary pronouncements adopted to protect the guilty, and to make it difficult for sincere hardworking prosecutors. They are the result of hundreds of years of struggle in fighting governmental oppression. They are necessary to protect the innocent. If an accused, even a guilty accused, cannot be convicted except by a violation of these principles, then he should not and cannot be lawfully convicted."

These principles are fundamental. The majority seek to escape their application by a series of false rationalizations and *non sequiturs*. They talk about the inherent fairness of compelling the defendant to divulge the names and reports of his witnesses, and state that such discovery procedures will aid "to ascertain the truth," and conclude that the violation of defendant's rights is not very serious because the requested information "will necessarily be revealed at the trial," and "[l]earning the identity of the defense witnesses and of such reports and x-rays in advance merely enables the prosecution to perform its function at the trial more effectively." The majority point to the cases that permit the defendant pretrial discovery, and conclude that "when this court permitted discovery in advance of as well as at the trial [citations], it was not acting under constitutional compulsion but to promote the orderly ascertainment of the truth. That procedure should not be a one-way street."

These rationalizations could be used to justify the Inquisition, and the use of the rack and the screw. The "one-way street" argument is obviously fallacious. The simple fact is that our system of criminal procedure is founded upon the principle that the ascertainment of the facts *is* a "one-way street." It is

the constitutional right of the defendant, who is presumed to be innocent, to stand silent while the state attempts to meet its burden of proof, that is, to prove the defendant's guilt beyond a reasonable doubt. The defendant, up until now, did not have to take an active part in the ascertainment of the facts. The majority opinion does not merely enlarge a simple judicial principle of pretrial procedure, it fundamentally alters our concepts of the rights of the accused, and forces him to come forward with information before the prosecution has presented a case against him.

The argument that because this court granted discovery to the defendant, it should grant it to the prosecution, fails to consider the nature of the defendant's right to pretrial discovery. While the cases establishing this right, cited by the majority, did hold that such right was not compelled by the due process clause, they also recognized and held that the defendant was entitled to such discovery as part of the fair trial impliedly granted to him by article I, section 13, of the state Constitution. Many of the cases recognized (see particularly *Powell* v. *Superior Court,* 48 Cal.2d 704, 706-707 [312 P.2d 698]; *People* v. *Riser,* 47 Cal.2d 566, 586 [305 P.2d 1]) that to give the defendant pretrial discovery might create an imbalance between the prosecution and defense, but held that such imbalance was inherent in our system of criminal procedure. While, of course, a criminal trial should be "fair" to the prosecution as well as to the defense, it should not be forgotten that the defendant has additional constitutional and statutory rights not given to the prosecution. The right not to incriminate himself, the right to remain absolutely mute until a prima facie case has been established, the right to the presumption of innocence until proved guilty beyond a reasonable doubt, are a few of these rights that completely refute the "one-way street" argument.

The majority give lip service to the existence of these rights and then emasculate them by holding that they do not apply where the requested information refers to a so-called "affirmative" defense. In other words the majority see no harm in judicially creating a right in the prosecution to compel the defendant to disclose the names of the witnesses he may intend to call and the X-rays and reports he may intend to introduce as long as these only relate to the affirmative defense that defendant disclosed on the motion for a continuance. The basis for this distinction apparently is that the sought after material will not or perhaps cannot be used by the prosecution in

establishing its prima facie case but only to rebut this possible affirmative defense. In other words, as I understand the majority, they hold that the defendant's constitutional right to remain silent, and his constitutional privilege against self incrimination, exist only so long as he does not disclose, even incidentally, that he may have an affirmative defense. If he does so disclose, prior to trial, he can be compelled to divulge his evidence in support of it. I suppose that, if on the motion for a continuance, the defendant had averred that he needed more time to look for witnesses that would testify a third person committed the offense, the majority would see no harm in compelling him to disclose, prior to trial, the names of the witnesses and the name of the third party. This, too, would be an ''affirmative defense.'' In fact, any defense other than to attempt to refute the prosecution's witnesses, is an ''affirmative'' defense.

This type of ''reasoning'' overlooks the possibility that the compelled revelation by the defendant that he may have only a weak defense may itself be self-criminating. Until today, in California, a defendant could weigh his proposed defense against the prosecution's case, and not make up his mind until he heard the strength or weakness of the case against him whether he would rely on a straight not guilty defense or urge an ''affirmative'' defense. Now he must make that decision before the state's presentation. If the majority opinion were sound, it would mean logically that the prosecution could serve interrogatories upon a defendant demanding to know whether or not he intends to rely on an ''affirmative'' defense, what it is, and what evidence he has to support it. I am not willing to see fundamental constitutional rights emasculated in this fashion.

This claimed distinction between a defense and an affirmative defense is a spurious one. Trial courts are neither omnipotent nor omniscient. It is a logical impossibility for a trial court to determine in advance what information requested by the prosecution relates solely to an affirmative defense and what information will not aid the prosecution in the preparation of its case against defendant. This is so because innocence is the very antithesis of guilt. Anything bearing upon one necessarily affects the other. It is the state's obligation to prove the guilt of defendant. It is defendant's choice to determine whether he will set up an ''affirmative'' defense to prove his innocence or simply deny guilt. But until the prosecution has made out a prima facie case against him, he is not

and should not be compelled to assist the prosecution either in its case in chief or in rebuttal of his possible defense.

It will not do to say that the impairment of constitutional rights is only minor in the instant case, and for that reason no one should get excited about it. The admonition given by the United States Supreme Court in *Boyd* v. *United States,* 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746], is as sound today as it was 77 years ago. It was there stated (p. 635):

"It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."

The majority rely on the alibi defense statutes found in several states, and upon two early Ohio cases, three intermediate New York appellate court cases, and a Wisconsin case upholding them. No federal case upholding such a statute is cited. The majority seem to reason that since some states *by statute* have compelled disclosure of the evidence in support of an alibi prior to trial, California by judicial mandate should create a similar rule as to affirmative defenses generally. We are not told what the constitutional provisions are in such states, nor whether an alibi defense may not be different from other affirmative defenses. The short and complete answer to this argument is, that if the Legislature tried by statute to adopt the rule announced by the majority, such statute would, in California, be unconstitutional.

Moreover, even if such a supposed statute would be constitutional, the point need not be labored that that is no legal reason why this court should legislate in the matter. It is no argument to say that this court "legislated" in favor of the defendant, and therefore should "legislate" in favor of the prosecution. As already pointed out, the holdings in reference to pretrial discovery by defendant were predicated on concepts that were held to compel such holdings in favor of defendants, but there are no such concepts that even suggest, far less compel, such a conclusion in favor of the prosecution. Thus

this court did not "legislate" in those cases. It is attempting to legislate now. I agree with what Judge Pierce said in his concurring opinion when this case was, before the District Court of Appeal (Cal.App.) 17 Cal.Rptr. 575, 578-579: "But the Legislature has not elected to tackle the ticklish problems of discovery in criminal cases directed against defendants and within that inconsiderable area bounded by the constitutional privilege against self-incrimination. I do not find any inherent judicial power to preempt this excursion into procedural reform. I believe that if the innovation is to come it should be the product of the lawmakers, not of the courts. Therefore I would hold that, absent legislation, no power exists in the trial court to command the defendant to produce the information here sought to be compelled." I add to that the thought that the assumption that the courts and not the Legislature are better equipped to determine policy in this field violates the separation of powers doctrine. The people, through their Constitution, have seen fit to confer this power on the Legislature and to deny it to the courts.

The writ should issue prohibiting all disclosure.

DOOLING, J.—I dissent from the majority opinion insofar as it authorizes discovery against a defendant in a criminal case. Admittedly discovery in criminal cases in this state is court-created. Heretofore, as noted in the majority opinion, it has been limited to discovery by the defendant. Historically and by constitutional safeguards the right of defendants in criminal cases to be free of any procedure savoring of judicial inquisition has been jealously protected. As Justice Peters points out in his dissenting opinion, at least absent some legislative provision such as those with regard to the defense of alibi referred to in the majority opinion, a defendant in a criminal case has never been compelled, in advance of the production of the prosecution's evidence against him, to determine upon what if any defenses he may ultimately rely. The opinion of the majority in this case makes a breach, even if a comparatively small one, in this right of this defendant and compels him now to commit himself to refrain from interposing the affirmative defense of impotency unless he makes certain disclosures to the prosecution in advance of the trial. I am fearful, not so much of the step taken in this case, as of its possible implications. It is purely by virtue of the accidental fact that the defendant in this case asked for a continuance to procure evidence to support a claim of impotency

that the prosecution was aware of the possibility that such a defense might be interposed. Normally the nature of his defenses would not be disclosed by the defendant in advance of trial. Are we laying down a rule in this case limited to similar cases, i.e., to cases in which for some reason the defendant in advance of trial chances to disclose in some manner his intention to rely upon some affirmative defense? If so the cases will be rare indeed in which the prosecution will be entitled to discovery. Or are we opening the door, as Justice Peters suggests, to a general inquiry by the prosecution whether the defendant intends to rely on any affirmative defense and if so what the nature of such affirmative defense may be? If the latter, and this seems the logical conclusion from the majority's holding, by court-made rule we are depriving the defendant of the right which he heretofore always enjoyed of waiting until the close of the prosecution's case to determine the defense or defenses, if any, which he might then interpose.

If the defendant's traditional freedom of action is thus to be curtailed, that curtailment seems to me to be preeminently a legislative and not a judicial function. The majority opinion cites no case from any jurisdiction in which any court has undertaken without statutory sanction to curtail this traditional right of a defendant, and I consider it unwise and dangerous for this court to enter upon such delicate ground.

I have some doubt of the constitutional limitations on our judicial power to subject a defendant in a criminal case to any form of discovery. Justice Peters has elaborated the basis of that doubt. But putting constitutional questions aside I am fearful as a matter of policy of the future outcome of even so small an initial court-created inroad upon the heretofore unquestioned right of a defendant in a criminal case to remain silent, if he chooses, at every stage of the proceeding against him.

Peters, J., concurred.

Petitioner's application for a rehearing was denied July 25, 1962. Dooling, J.,* participated in place of Traynor, J. Peters, J., and Dooling, J.,* were of the opinion that the application should be granted.

*Assigned by Chairman of Judicial Council.