THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, PLINIO PÉREZ MARRERO, JUDGE, Respondent; RUBÉN DE JESÚS, Intervener.

No. C-64-22.     Decided March 23, 1965.

*Rodolfo Cruz Contreras, Acting Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for petitioner. *E. L. Belén Trujillo* for intervener.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, pro tempore, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Rule 74 of the Rules of Criminal Procedure of 1963 provides that "When the defendant makes a plea of not guilty and intends to establish the defense of insanity at the time of the alleged commission of the offense charged against him, or the defense of alibi, he shall, not less than ten days before the trial, file with the court a notice to that effect, serving a like notice on the attorney of the government. If the defendant fails to serve such notice he shall not be permitted to offer evidence tending to establish said defenses. The court may, however, permit the introduction of said evidence if just cause is shown for the failure to serve the notice. In that event, the court may decree the continuance of the trial on motion of The People, grant leave to reopen the case of The People, or provide for any appropriate remedy."

In adopting this provision, Puerto Rico joined the number of jurisdictions requiring advance notice of the defenses of insanity[1] and alibi,[2] thereby statutorily granting to the Government a means for discovery of proof prior to the trial.[3]

---

[1] The states requiring notice of plea of not guilty by reason of insanity or the defense of insanity at the time of committing the crime are Arizona, Arkansas, California, Colorado, Florida, Indiana, Iowa, Michigan, Utah, Vermont and Washington. See n. 11 in the note appearing in 61 Mich. L. Rev. 987, 989 (1963), and Weihofen, Mental Disorder as a Criminal Defense 241, 272 (1954).

[2] The states requiring notice of the defense of alibi are Arizona, Iowa, Indiana, Kansas, Michigan, Minnesota, New Jersey, New York, Ohio, Oklahoma, South Dakota, Utah, Vermont and Wisconsin. See n. 13 in Louisell, Criminal Discovery: Dilemma Real or Apparent?, 49 Calif. L. Rev. 56, 61 (1961).

[3] On the discovery of evidence in criminal cases, see, in general, Brennan, Remarks in Discovery, 33 F.R.D. 56 (1964); Datz, Discovery in Criminal Procedure, 16 U. Fla. L. Rev. 163 (1963); Garber, The Growth of Criminal Discovery, 1 Crim. L.Q. 3 (1962); Developments in the Law—Discovery, 74 Harv. L. Rev. 942, 1051–63 (1961); Louisell, Criminal Discovery: Dilemma Real or Apparent?, 49 Calif. L. Rev. 56 (1961); Fletcher, Pretrial Discovery in State Criminal Cases, 12 Stan. L. Rev. 293 (1960).

The present appeal is aimed at delimiting the extent of the discovery authorized.

I

The district attorney filed an information for the crime of murder in the first degree against Rubén de Jesús Díaz, charging him that on July 22, 1963, he assaulted and attacked Carmen Rosa Galarza with a revolver inflicting serious wounds which caused her death. He was also charged with a violation of § 8 of the Weapons Law. The arraignment was made on the following October 21, and in the course thereof defendant requested a term of 10 days to make his plea. The trial court granted the same and also provided that if no plea was made within the said term, a plea of not guilty would be entered.

On October 22 defendant made several motions seeking orders requiring (1) the appearance of the witnesses endorsed on the information in order that the defense attorney could interview them in one of the rooms of the court and in the presence of one of the marshals or of a Government representative;[4] (2) to make available copies of sworn statements in possession of the district attorney and which were used in determining probable cause; (3) that a preliminary hearing be held pursuant to Rule 23 of the Rules of Criminal Procedure of 1963; (4) the surrender of the sworn statement given by defendant in the course of the investigation made by the district attorney, as well as copies of the photographs taken for the case, of the report of the autopsy, and of the criminal record of the prosecution witnesses.

A memorandum was filed on the same date entitled "Plea and Notice under Rule 74," which in its pertinent part reads:

"1. His plea is of not guilty by reason of the fact that at the time of committing the crime he was not conscious of his

---

[4] See *Hoyos Gómez* v. *Superior Court*, 90 P.R.R. 196 (1964).

acts, and/or could not tell right from wrong by reason of insanity. See § 39(6) of the Penal Code of Puerto Rico.

"2. Defendant pleads not guilty by reason of insanity, and moves for trial by jury in both cases."

On December 3 the district attorney appeared by motion in connection with defendant's motions and contentions, stating that:

"(1) . . . defendant is bound by Rule 74 to serve notice on the district attorney not only that he is going to plead not guilty by reason of insanity at the time of committing the crime, but also to inform with what witnesses, including expert psychiatrists, he proposes to establish his defense of insanity.

"(2) In consonance with this position . . . it is also defendant's duty to furnish him with the address of the witnesses, the documents he proposes to offer at the trial, if he has any documentary evidence to support his defense of insanity, clinical history, in what hospitals and on what dates he underwent psychiatric treatment, and in what institutions he was confined and the date.

"(3) . . . that the purpose of Rule 74 is not merely to announce that defendant is going to plead insanity, but the intention is to place the Government in a position to know what evidence defendant has available to establish his defense.

"(4) . . . in order that the Government may prepare itself to cope with such a defense, the district attorney desires to be furnished with a copy of the documents, clinical history, and any other documentary evidence which defendant may have in this case."

The trial court denied the district attorney's request.

## II

In order to have a clear picture, it is well to copy from the opinion delivered in *People* v. *Alsina*, 79 P.R.R. 44 (1946), the exposition on the standard of proof which should govern when insanity is alleged as a defense to criminal liability. We said at pp. 57–58: "The law presumes that sanity is the normal condition, a presumption which is justified by human

experience and by considerations of public policy, and, hence, that the defendant was of a sound mind when he committed the act charged as an offense. By virtue of that presumption, The People is not required to offer any evidence to show that the defendant was sane at that moment, *unless* evidence is offered and received which may create a reasonable doubt as to sanity, which evidence must be furnished by the defendant if he relies on the absence of mental soundness for exemption from responsibility, but which may also develop from the evidence offered by The People when presenting its case. [Citations.] However, once there is evidence capable of creating that doubt, the presumption that the defendant was sane at the time of committing the act is overcome and the State is required to prove sanity as well as any other fact. After weighing the entire evidence as to the act charged and as to insanity, the trier is required to determine whether the prosecution has established defendant's sanity, his capacity to commit a crime, and, if it then entertains reasonable doubt, it is under the duty to give the benefit of that doubt to the defendant and to acquit him. [Citations.]" See, also, *People* v. *Sánchez*, 79 P.R.R. 110, 113–14 (1956); *People* v. *Velázquez*, CR-63-345, judgment of June 26, 1964.[5]

In consonance with the standard stated, according to Rule 73 a plea of not guilty constitutes a denial of the essential facts of the information, and permits defendant to present in evidence all facts tending to establish a defense, *subject to the provisions of Rules 63 and 74.* The latter Rule requires precisely advance notice that defendant intends to allege insanity as a defense.

---

[5] Both the present Rule 146 and the former § 283 of the Code of Criminal Procedure, 34 L.P.R.A. § 814, provide that in such cases the jury shall state in its verdict that defendant is "not guilty by reason of insanity." See *People* v. *Rivera*, CR-63-191, judgment of February 24, 1964.

In the present case defendant complied *voluntarily* with the provisions of Rule 74. His only objection is to furnish the information requested by the Government on the evidence which he proposes to use to establish his defense of insanity, to wit: the name and address of the witnesses, including the expert psychiatrists whom he intends to use, and the documentary evidence, including any clinical record, as well as the identification of the institutions where he has been confined or received treatment, including the pertinent dates. In that connection, he invokes (a) the constitutional guarantee against self-incrimination; (b) the privileged character of the communications between physician and patient; and (c) the provision contained in § 11 of the Code of Criminal Procedure, 34 L.P.R.A. § 11, which prevents the district attorney from interrogating the defense witnesses except at the trial.

■ 1. Section 11 of Art. II of the Constitution of the Commonwealth of Puerto Rico recognizes the right against self-incrimination in the following words: "No person shall be compelled in any criminal case to be a witness against himself." At first blush this zealously guarded privilege seems to conflict with the statutory provisions requiring advance notice of a particular defense in criminal prosecutions. But as we analyze it in detail, the objection is more apparent than real. It is well to point out that these provisions do not violate at all the presumption of innocence, since, irrespective of whether or not the notice is served, the Government is always bound to establish a prima facie case and is not relieved from establishing defendant's responsibility beyond a reasonable doubt. Hence, even though the latter has announced his purpose to allege the defense of insanity or of alibi, if at the close of the prosecution evidence he deems it insufficient, he may choose not to present any evidence.[6]

---

[6] It has been held that it is error to comment that defendant signified his intention to rely on the defense of alibi and afterwards abandoned or

Therefore, the advance notice does not actually bind him to furnish evidence against himself.

On the other hand, the information required, since it refers to defendant's affirmative defense, is essentially of exculpatory nature. Moreover, it concerns evidence which he intends to use at the trial. Regarding the specific defenses mentioned in Rule 74, it should be noted that any information which may be furnished does not tend to establish the Government's case; hence, it cannot be used as index of proof by the Government. On the other hand, according to the norm laid down in *Alsina, supra,* defendant is bound to raise the question of mental soundness at the time of committing the act charged by the presentation of evidence.[7]

Although in our judgment a reading of the opinions delivered shows that the objection noted has not been formally discussed, the constitutionality of statutes requiring notice of the defense of alibi has been upheld since 1931. *State* v. *Thayer,* 176 N.E. 656 (Ohio 1931). The same view is held in *State* v. *Smetana,* 2 N.E.2d 778 (Ohio 1936); *State* v. *Kopacka,* 51 N.W.2d 495 (Wis. 1952); *State* v. *Cunningham,* 185 N.E.2d 327 (Ohio 1961); *People* v. *Schade,* 292 N.Y. Supp. 612 (1936); *People* v. *Rakiec,* 23 N.Y.S.2d 607 (1940); *People* v. *Shulenberg,* 112 N.Y.S.2d 375 (1952). See, in general, Epstein, *Advance Notice of Alibi,* 55 J. Crim. L., C. & P.S. 29 (1964), and Waddington, *Criminal Discovery and the Alibi Defense,* 37 L.A. Bull. 7 (1961).

The question is discussed at length in *Jones* v. *Superior Court of Nevada County,* 372 P.2d 919 (Calif. 1962). Owing to its importance, we shall make a more elaborate exposition of the facts and of the ruling entered. In a prosecution for

---

submitted the case without evidence. *People* v. *Mancini,* 188 N.Y.S.2d 559 (1959), 160 N.E.2d 91 (1959); *State* v. *Cocco,* 55 N.E.2d 430 (Ohio 1943).

[7] The burden of establishing the defense of alibi is also on defendant. *State* v. *Searles,* 197 A.2d 384 (N.J. 1964); *State* v. *Post,* 123 N.W.2d 11 (Iowa 1963); *State* v. *Stump,* 119 N.W.2d 210 (Iowa 1963).

rape defendant announced his intention to rely on his defense of alleged impotence. The trial court granted a motion by the district attorney for discovery of all medical reports and X rays on defendant's actual condition, the name and address of the physicians who had treated him prior to the trial, and the name and address of the physicians whom he intended to call to testify. On appeal, it was held that the Government was entitled to discover information intended to be introduced in evidence in support of his affirmative defense. The decision carries more weight if we consider that there was no statutory provision requiring defendant to serve advance notice of his intention to allege impotence as a defense. In the pertinent part of the opinion delivered it is said:

"The prosecution, however, is entitled to discover the names of the witnesses petitioner intends to call and any reports and X rays he intends to introduce in evidence in support of his particular affirmative defense of impotence. A number of states have statutes permitting or requiring discovery in criminal cases of the identity of witnesses who are to be called to testify for a defendant in connection with a particular defense, such as an alibi. [Citations.] Although such discovery may require a defendant to disclose information that would lead to effective rebuttal of his defense, these statutes have uniformly been upheld against the claim that they violate the privilege against self-incrimination. [Citations.] The identity of the defense witnesses and the existence of any reports or X rays the defense offers in evidence will necessarily be revealed at the trial. The witnesses will be subject to cross-examination, and the reports and X rays subject to study and challenge. Learning the identity of the defense witnesses and of such reports and X rays in advance merely enables the prosecution to perform its function at the trial more effectively. Thus, 'the alibi statutes do not infringe on the privilege against self-incrimination. Rather, they set up a wholly reasonable rule of pleading which in no manner compels a defendant to give any evidence other than that which he will voluntarily and without compulsion give at trial. Such statutes do not violate the right of a defendant to be forever silent. Rather they say to the accused: If you

don't intend to remain silent, if you expect to offer an alibi defense, then advance notice and whereabouts must be forth-coming; but if you personally and your potential witnesses elect to remain silent throughout the trial, we have no desire to break that silence by any requirement of this statute.' (Dean, Advance Specification of Defense in Criminal Cases, 20 A.B.A.J. 435, 440.)

"Insofar as the trial court's order herein requires petitioner to reveal the names and addresses of witnesses he intends to call and to produce reports and X-rays he intends to introduce in evidence to support his defense of impotence, it does not violate the privilege against self-incrimination . . . . It simply requires petitioner to disclose information that he will shortly reveal anyway." (At p. 922.)[8]

The *Jones* opinion has been the object of scrutiny by law scholars with special emphasis on the possible impact on the privilege against self-incrimination, but the result reached has indeed been overwhelmingly supported. Bishop, *The Self-Incrimination Privilege: Barrier to Criminal Discovery*, 51 Calif. L. Rev. 135 (1963), and comments in 39 Wash. L. Rev. 853, 861 (1964); 61 Mich. L. Rev. 987 (1963); 76 Harv. L. Rev. 838 (1963); 49 Iowa L. Rev. 176 (1963); 10 U.C.L.A. L. Rev. 937 (1963); 63 Colum. L. Rev. 361 (1963); 15 Stan. L. Rev. 700 (1963); 35 U. Colo. L. Rev. 290 (1963); 8 Vill. L. Rev. 110 (1962); Annotation, *Right of prosecution to pretrial discovery, inspection and disclosure*, 96 A.L.R.2d 1213 (1964).

■ The additional circumstance that defendant *voluntarily* announced his intention to allege insanity as a defense to his criminal responsibility concurs in the present case. Such action constitutes a limited waiver of any privilege against self-incrimination which may conceivably be involved

---

[8] The basis of the dissenting opinion in *Jones* is that to authorize the discovery requested would violate defendant's right to remain silent until a prima facie case is established, and that, in any event, the initiative to grant discovery at the Government's request is a legislative function. For a refutation of this position, see 76 Harv. L. Rev. 838 (1963).

in the case. 49 Iowa L. Rev. 176, 182, especially the cases cited in n. 29; 10 U.C.L.A. L. Rev. 937, 939; *cf. People* v. *Aspurúa*, 61 P.R.R. 244 (1943). Its challenge would be confined, not to the constitutionality of Rule 74, but to the manner in which the prosecution pretends to implement it.

■ As to the latter, we cannot lose sight of the development and the factors which have been considered in order to grant to defendant, by judicial construction, the right to discover evidence at different stages of the criminal prosecution. We have repeatedly held that the criminal prosecution is not a sports fight to determine the best gladiator, and that its cardinal purpose is the ascertainment of the truth. *People* v. *Superior Court*, 80 P.R.R. 679 (1958); *People* v. *Ribas*, 83 P.R.R. 371 (1961); *People* v. *Galeano*, 83 P.R.R. 500 (1961). That is why we should guarantee a procedure leading to the introduction of proper evidence which may be pertinent to the factual controversy, avoiding as much as possible that the surprise and concealment—inevitable result of the adversative system—may cloud and prevent the search for the truth. Traditionally the formulation of rules of evidence and of discovery has been a judicial function, the result of everyday experience in the consideration of civil and criminal cases. Nothing should prevent us from reading the proper context of Rule 74 in order that it may operate as an effective measure in the course of the proceedings, safeguarding always any constitutional guarantee recognized to defendant.[9]

---

[9] As in civil procedure, the tendency that the discovery of evidence in criminal cases should respond to the criterion of reciprocity is more marked every day. Eloquent proof of this is the amendments proposed to Rules 12, 15 and 16 of the Federal Rules of Criminal Procedure, especially the recommendation of a new subd. (c) to Rule 16, which would authorize the court to condition the discovery sought by defendant by requiring him to permit the State to inspect the evidence which he intends to produce. Wright, *Proposed Changes in Federal Civil, Criminal and Appellate Procedure*, 35 F.R.D. 317, 325–31 (1964).

■ 2. The privilege invoked concerning communications between physician and patient is not applicable. The clear language of § 40 of the Law of Evidence—§ 402 of the Code of Civil Procedure, 32 L.P.R.A. § 1734—refers to the examination in *civil* actions as to any information acquired during the treatment of the patient, which was necessary for prescribing to the patient or deciding what seemed advisable. *Cf.* Rule 207(2) of the Draft of the Rules of Evidence of 1958.[10]

3. Neither does § 11 of the Code of Criminal Procedure come into play in this case, since the district attorney has merely requested to be informed the name of the witnesses whom defendant might call to establish his insanity at the time of committing the crime.

■ In our opinion, if intervener's contention should prevail, to the effect, disregarding his objections at the most, that the Government is only entitled to be informed that defendant intends to allege insanity as a defense, but not

---

[10] On March 14, 1963, a bill was introduced in the House of Representatives—H.B. 720—to amend subd. (4) of § 40, with special emphasis on psychiatrists, with the following text:

"4. A physician, psychiatrist, or surgeon, or the assistant to any of these, may not, without the patient's consent, be examined in connection with any communication made by the latter to the former in the course of their relation as physician and patient, or with some information acquired by the physician, psychiatrist, or surgeon during the treatment of the patient. This privilege shall extend to the records of public and private hospitals insofar as the latter contain information on the diagnosis and treatment obtained on the basis of the necessary communications which may have existed between the physician and the patient. However, this paragraph shall not apply to an action between the physician, psychiatrist, or surgeon and his patient in which the treatment of the patient by the physician, psychiatrist, or surgeon may be involved; provided, that a physician, psychiatrist, or surgeon shall be competent to testify on the cause of the death of any person and on the mental or physical condition of a party in a civil action, or of the defendant in a criminal case, whenever such mental or physical condition is in issue."

See the dissenting opinion of Mr. Justice Goldberg, of the Federal Supreme Court, in *Spencer* v. *California*, 377 U.S. 1007, 12 L.Ed.2d 1055.

to additional information to place the district attorney in a position to acquiesce, if it so appears from his investigation, or, on the contrary, to meet said defense, the innovation introduced upon approving Rule 74 would be practically academic and barren. It is true that the element of surprise would be eliminated, but the prosecution would be unjustifiedly delayed. For that reason, it is proper to give true content to the provision under construction, as was done in California, even in the absence of statutory provision. By so doing we merely propitiate the ascertainment of the truth.

The order entered on January 3, 1964, by the Superior Court, San Juan Part, will be set aside and the case remanded for entry of an order directing defendant to furnish to the Government the following information: (a) the name and address of the witnesses, including the experts, whom he proposes to use in order to establish the defense of insanity, excluding his own testimony, and (b) the documentary evidence he intends to use to support such defense. *Cf. People v. Aspurúa, supra.*