Opinion
 

 ORTEGA, Acting P. J.
 

 Paul Anise Thompson is charged with possessing a gun as a convicted felon with several prior convictions. Before trial, pursuant to a prosecution discovery request, the trial court ordered Thompson, over his objection, to give the prosecution raw written notes from interviews by his investigator and one of his attorneys with defense witnesses who might testify at trial. The trial court relied on Penal Code section 1054.3,
 
 [1]
 
 part of the comprehensive criminal discovery reforms (§§ 1054-1054.7) enacted when the voters passed Proposition 115 on June 5, 1990. The trial court exempted any attorney work product from the order. Some, but not all, of the raw notes were converted into written reports, which have been given to the prosecution. Thompson brought this writ petition to challenge the order.
 

 We conclude the trial court correctly decided that raw written witness interview notes, to the extent they record the witness’s statement rather than an attorney’s work product impressions, opinions, or conclusions about the statement, are “statements” as defined in section 1054.3 and thus subject to discovery. Because of our conclusion, we deny Thompson’s writ petition.
 

 Facts and Procedural History
 

 On July 23, 1996, the information was filed. It included a statement that “[p]ursuant to . . . Section 1054.5[, subdivision] (b), the People are hereby informally requesting that defense counsel provide discovery to the People as required by . . . Section 1054.3.” As relevant, section 1054.3 provides: “The defendant and his . . . attorney shall disclose to the prosecuting attorney: [']□ (a) The names and addresses of persons, other than the defendant, he . . . intends to call as witnesses at trial,
 
 together with any relevant written or recorded statements of those persons, or reports of the statements of those persons
 
 . . . .” (Italics added.) At a pretrial conference, the prosecution requested “disclos[ur]e [of] notes of defense witness interviews conducted by [one of Thompson’s lawyers] at or prior to the preliminary hearing.” The trial court granted the prosecution’s request.
 

 In response, Thompson gave the prosecution two written “investigation report[s]” by his investigator of interviews with two defense witnesses.
 
 *483
 
 (Capitalization omitted.) The reports were accompanied by a letter from Thompson’s trial attorney stating: “Attached please find statements of defense witnesses. I also have some interview notes of these same witnesses taken by the attorney who was handling the case at the same time. I think it is an open legal issue whether those have to be disclosed. As I have not been receiving notes taken by Deputy D.A.’s at prelim, I’m not disclosing our prelim attorney’s notes either. . . .”
 

 During the discovery hearing, Thompson’s attorney described the disputed material: “[A]t the preliminary hearing date . . . one of our lawyers spoke with some witnesses and took some notes about those conversations. Those witnesses were subsequently interviewed by our investigator and statements prepared. Copies of those statements have been provided to the district attorney, [¶] • • • [¶] • • • [T]he lawyer’s notes have not. . . . [Subsequent to when we first discussed this, we made further inquiry and we discovered that the investigators had actually raw notes that they routinely file somewhere, . . . and those exist as well and those also have not been given to the People.”
 

 Thompson argued that, regarding
 
 attorney
 
 witness interview notes, long-established practice did not consider those to be statements subject to disclosure. Thompson claimed, without objection, that prosecutors rarely, if ever, disclosed such notes to defendants. The prosecutor requested the court to order disclosure of “notes of witness statements made to any representative of the public defender’s office in this case, be it a deputy public defender, a law clerk or an investigator . . . .”
 

 The trial court, after examining the relevant statutes, stated: “I take this to mean—plain language of the statute in English, ‘statement’ means a statement.” The trial court “required [Thompson] to turn over the investigator’s reports of statements of any witnesses, either what you refer to as rough statements, rough notes or formal written statements that are written from the rough notes. In addition, . . . any statements of these witnesses who you plan to call at trial that do not fall within the work product privilege a[s] is defined in [Code of Civil Procedure] section 2018[, subdivision] (c), . . . that are taken by the attorney would appear to be discoverable under [section] 1054.3. So I will order that those be provided as well.”
 

 The court later clarified its ruling: “I think it is a statement. I think if it’s something somebody said [that] the attorney wrote down, that’s a statement. If that’s a statement of a witness you plan to use at trial, then that’s discoverable. That’s what the statute says. [¶] It doesn’t say ‘unless a statement [is] taken by an attorney.’ The only exception in terms of the
 
 *484
 
 statements for notes would be for writings . . . defined in the work product statute in the Code of Civil Procedure.”
 

 Discussion
 

 Thompson begins his argument by correctly noting that the new discovery scheme laid out in sections 1054-1054.7, to the extent possible under constitutional and other statutory requirements, requires that discovery be reciprocal, i.e., equal between the parties.
 
 (Wardius
 
 v.
 
 Oregon
 
 (1973) 412 U.S. 470, 472, 473-479 [93 S.Ct. 2208, 2111-2114, 37 L.Ed.2d 82];
 
 Izazaga
 
 v.
 
 Superior Court
 
 (1991) 54 Cal.3d 356, 372-373 [285 Cal.Rptr. 231, 815 P.2d 304].) Thus, if we conclude that raw written notes of
 
 defense
 
 witness interviews are discoverable by the prosecution as “statements” under section 1054.3, similar written notes of
 
 prosecution
 
 witness interviews (by police, investigators, or prosecutors) likewise would be discoverable by the defense under section 1054.1, subdivision (f), in both cases limited to witnesses the parties intend to call at trial.
 
 [2]
 
 Thompson argues that such notes are not statements, and thus are not discoverable by either party under the statutory scheme. Because “no discovery shall occur in criminal cases except as provided by [sections 1054-1054.7], other express statutory provisions, or as mandated by the Constitution of the United States” (§ 1054, subd. (e); 54 Cal.3d at pp. 370-371), Thompson concludes the trial court erred in ordering the raw notes disclosed.
 

 Thompson correctly notes that the prosecution, but not the defense, has an independent constitutional obligation to disclose any material evidence
 
 *485
 
 which may tend to exculpate him, even absent a defense discovery request.
 
 (Kyles
 
 v.
 
 Whitley
 
 (1995) 514 U.S. 419 [115 S.Ct. 1555, 131 L.Ed.2d 490];
 
 Brady
 
 v.
 
 Maryland
 
 (1963) 373 U.S. 83, 87 [83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215];
 
 Izazaga
 
 v.
 
 Superior Court, supra,
 
 54 Cal.3d at pp. 378-379.) Because some cases have held raw interview notes must be disclosed under the
 
 Brady
 
 requirement, Thompson concludes this constitutional obligation compels the prosecution to disclose such raw notes.
 
 [3]
 
 So, the thrust of Thompson’s argument is that he can have his cake (not have to disclose notes of defense witness interviews) and eat it too (compel the prosecution to disclose such notes of its witness interviews.) Unfortunately for Thompson, we agree with the prosecution that raw written notes of witness interviews, other than attorney work product, are “statements” as defined in sections 1054.3, subdivision (a), and 1054.1, subdivision (f), and thus must be disclosed by both sides.
 

 Thompson does not claim the raw notes contain work product or other privileged material. (Code Civ. Proc., § 2018, subd. (c); § 1054.6.) Thompson also makes no distinction between an investigator’s and an attorney’s notes. The trial court held that raw written interview notes are “statements” as defined in sections 1054.3, subdivision (a), and 1054.1, subdivision (f). Thompson argues that raw written notes of witness interviews, regardless of who takes them or whether they are used to produce formal written reports, are
 
 not
 
 “relevant written or recorded statements ... or reports of the statements” of his witnesses, disclosure of which is required by section 1054.3, subdivision (a). Without citation to relevant authority, Thompson argues “this is
 
 not
 
 the plain meaning of the term ‘statement.’ [¶] The ‘statement’ of the witness is the report of the interviewer. The raw notes taken by an interviewer, lawyer or investigator, are simply notes to assist in the preparation of a report of that statement. ... [¶] ... [R]aw notes are
 
 not
 
 a ‘statement,’ and thus do not come within the scope of the discovery statute. The statute does not provide for discovery of notes, only ‘statements.’ ”
 

 First, the statutes provide that
 
 both
 
 witness “statements”
 
 and
 
 “reports of the statements” are discoverable. Thus, contrary to Thompson’s argument,
 
 *486
 
 the statutes, by using “or” rather than “and” to separate “statements” from “reports,” distinguish reports from statements, and require disclosure of both. If statements and reports were the same, the statutes would not list them separately and require disclosure of both. If we accepted Thompson’s argument, we would have to ignore express statutory language. Thompson’s argument would require us to delete “statements” from the statute and read the relevant sections as requiring disclosure only of “reports,” making “statements” mere surplusage.
 

 Such a reading violates the “ “. . . cardinal rule of construction . . . that ... a construction making some words surplusage is to be avoided.” ’ [Citation.]”
 
 (State of South Dakota
 
 v.
 
 Brown
 
 (1978) 20 Cal.3d 765, 776-777 [144 Cal.Rptr. 758, 576 P.2d 473]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Introduction to Crimes, § 36(2), p. 45.) “In construing these provisions to determine whether they authorized the discovery order made in the present case, our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure. [Citations.] ‘To determine intent, “ ‘The court turns first to the words themselves for the answer.’ ” ’ [Citation.]”
 
 (In re Littlefield
 
 (1993) 5 Cal.4th 122, 130 [19 Cal.Rptr.2d 248, 851 P.2d 42] [interpreting sections 1054-1054.7]). Of course, “[i]f the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.]”
 
 (People
 
 v.
 
 Knowles
 
 (1950) 35 Cal.2d 175, 183 [217 P.2d 1].) This statutory language is clear. Thus, Thompson’s argument, that only reports are “statements,” is contradicted by express statutory language.
 

 Moreover, the witness’s words, whether recorded electronically or by someone writing them down,
 
 are
 
 the statement. Whether left in that form, or rearranged, restated, or edited by someone else, the witness’s words in the raw written notes or unedited tape remain a statement. As the statute makes clear, a report records the witness’s statement, in a rearranged, restated, or edited form. Contrary to Thompson’s claim, the report derives from the notes; the notes do not derive from the report. “[Statements of witnesses . . . constitute material of a nonderivative or noninterpretative nature. [Citations.]”
 
 (People
 
 v.
 
 Williams, supra,
 
 93 Cal.App.3d at pp. 63-64.) If Thompson’s argument were correct, no one could electronically record or write his own statement. Like the question whether a falling tree produces a sound if there is no one to hear it, Thompson’s argument would mean a self-recorded statement does not exist because no one else heard and interpreted it. To the contrary, self-recorded statements are statements although not heard or interpreted by someone else. So, too, raw written notes of a witness interview are witness statements, regardless of whether they later are used to prepare a report of the statement.
 

 
 *487
 
 While Thompson’s argument, our analysis, and our conclusion are based on the statutes’ plain meaning, our conclusion follows the purpose of Proposition 115’s discovery provisions (§§ 1054-1054.7). “The manifest intent behind the measure was to reopen the two-way street of reciprocal discovery. The preamble to Proposition 115 states that ‘comprehensive reforms are needed
 
 to restore balance
 
 and fairness to our criminal justice system.’ (Prop. 115, § 1(a) . . . .) In order to accomplish this goal, the voters intended to remove the roadblock to prosecutorial discovery created by our interpretations of the state constitutional privilege against self-incrimination . . . .”
 
 (Izazaga
 
 v.
 
 Superior Court, supra,
 
 54 Cal.3d at p. 372.)
 

 “The purpose of section 1054 et seq. is to promote ascertainment of truth by liberal discovery rules which allow parties to obtain information in order to prepare their cases and reduce the chance of surprise at trial. [Citation.] Reciprocal discovery is intended to protect the public interest in a full and truthful disclosure of critical facts, to promote the People’s interest in preventing a last minute defense, and to reduce the risk of judgments based on incomplete testimony. [Citation.]”
 
 (People
 
 v.
 
 Jackson
 
 (1993) 15 Cal.App.4th 1197, 1201 [19 Cal.Rptr.2d 80].)
 

 “Among the primary purposes of the new discovery chapter, as expressly stated in section 1054, are ‘[t]o promote the ascertainment of truth in trials by requiring timely pretrial discovery’ .... These objectives reflect, and are consistent with, the judicially recognized principle that timely pretrial disclosure of all relevant and reasonably accessible information, to the extent constitutionally permitted, facilitates ‘the true purpose of a criminal trial, the ascertainment of the facts.’ [Citations.]”
 
 (In re Littlefield, supra,
 
 5 Cal.4th at pp. 130-131.) Our conclusion follows Proposition 115’s clear intent.
 

 As discussed above, our conclusion also is consistent with pre-Proposition 115 cases which held that police officers’ and prosecutors’ raw written notes had to be preserved after entry of a discovery order and disclosed to the defense whether or not they were turned into formal written reports.
 
 [4]
 
 Likewise, our conclusion is consistent with cases interpreting sections 1054-1054.7.
 

 
 *488
 

 Woods
 
 v.
 
 Superior Court
 
 (1994) 25 Cal.App.4th 178, 1811 [30 Cal.Rptr.2d 182], upheld the compelled disclosure to the prosecution of “the results of standardized tests taken by a psychologist where the psychologist was identified as a defense expert, the psychologist relied on the test results in forming an opinion and his opinion was disclosed to the district attorney.”
 
 Hines
 
 v.
 
 Superior Court, supra,
 
 20 Cal.App.4th at pages 1821-1824, required the production of a defense expert’s raw written notes recording “factual determinations of the expert from observations made during an examination”
 
 (id.
 
 at p. 1823), but not drafts of the final written report which reflect the expert’s thought processes or initial conclusions, and not reports of nontestifying experts relied upon by the testifying expert. As discussed above, raw notes of the witness’s words are not drafts expressing the report writer’s thought processes, but themselves are witness “statements.”
 

 Because, as discussed above, post-Proposition 115 discovery must be reciprocal, our holding likewise requires the compelled disclosure to the defense of raw written notes of police and prosecutors’ witness interviews. While we think this already was required, our decision makes it certain.
 

 Thus, we conclude the defense must disclose to the prosecution raw written witness interview notes reflecting the witness’s statement, but not the impressions or opinions of the interviewer, regardless of whether the notes are used to produce a formal written witness statement report.
 

 Disposition
 

 We uphold the trial court’s discovery order, deny Thompson’s writ petition, and remand the matter for discovery compliance and trial.
 

 Vogel (Miriam A.), J., and Masterson, J., concurred.
 

 [1]
 

 Unless otherwise noted, all further section references are to the Penal Code.
 

 [2]
 

 Sections 1054.1, subdivision (f) and 1054.3, subdivision (a) use the same words to describe the prosecution’s and defense’s duty to disclose written witness statements: “Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial . . .” (§ 1054.1, subd. (f)); “persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons....’’ (§ 1054.3, subd. (a).) Thus, regarding witness statement disclosure, the Proposition 115 discovery scheme is expressly reciprocal, satisfying the constitutional reciprocity requirement.
 

 In contrast, the prosecution must disclose all “[statements of all defendants” (§ 1054.1, subd. (b)); regarding defendants’ statements, the prosecution’s disclosure obligation is not limited to written or recorded statements or reports of such statements. The defense, of course, is not required to disclose any statements by the defendant, other than those made to testifying defense experts who rely on them
 
 (Hines
 
 v.
 
 Superior Court
 
 (1993) 20 Cal.App.4th 1818, 1821-1824 [25 Cal.Rptr.2d 712]), but is required to disclose only the names, addresses, and statements of “persons, other than the defendant, he or she intends to call as witnesses at trial[.]” (§ 1054.3, subd. (a).) Not only does the statute not require the defense to disclose statements by the defendant, but forced disclosure of such statements would violate the defendant’s Fifth Amendment privilege against self-incrimination (Evid. Code, § 940; see
 
 Izazaga
 
 v.
 
 Superior Court, supra,
 
 54 Cal.3d at pp. 366-372) and, if made to his counsel, the attorney-client privilege (§ 1054.6; Evid. Code, §§ 950-955.)
 

 [3]
 

 See
 
 In re Gary G.
 
 (1981) 115 Cal.App.3d 629, 639-642 [171 Cal.Rptr. 531] (prosecution investigator’s raw notes used to prepare a formal written report given to the defense should be disclosed if in existence when a discovery order entered, but, if destroyed before entry of the order, no discovery violation);
 
 People
 
 v.
 
 Williams
 
 (1979) 93 Cal.App.3d 40, 63-64 [155 Cal.Rptr. 414] (trial court error not to compel disclosure to defense of prosecutor’s witness interview notes);
 
 McCarthy
 
 v.
 
 Superior Court
 
 (1958) 162 Cal.App.2d 755, 759-761 [328 P.2d 819] (trial court error not to compel disclosure to defense of raw police notes of defendant’s interview, although no formal written report ever prepared); 5 Witkin and Epstein, California Criminal Law (2d ed. 1989) Trial, section 2494, pages 2995-2996.
 

 On the prosecution’s duty to preserve potentially exculpatory evidence in its possession, see
 
 California
 
 v.
 
 Trombetta
 
 (1984) 467 U.S. 479 [104 S.Ct. 2528, 81 L.Ed.2d 413];
 
 People
 
 v.
 
 Johnson
 
 (1989) 47 Cal.3d 1194, 1233-1234 [255 Cal.Rptr. 569, 767 P.2d 1047].
 

 [4]
 

 These cases involve defense discovery of prosecution witness statements. Before Proposition 115’s 1990 passage, earlier efforts to provide even limited prosecution discovery by judicial decision
 
 (Jones
 
 v.
 
 Superior Court
 
 (1962) 58 Cal.2d 56, 60-62 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213]) or statute (former § 1102.5, repealed by Prop. 115) were rejected by our Supreme Court.
 
 (People
 
 v.
 
 Collie
 
 (1981) 30 Cal.3d 43, 48, 55-56 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776] [rejecting judicially declared prosecution discovery];
 
 In re Misener
 
 (1985) 38 Cal.3d 543, 545 [213 Cal.Rptr. 569, 698 P.2d 637] [holding former section 1102.5 unconstitutional].) Proposition 115’s discovery provisions have withstood constitutional challenge.
 
 (Izazaga
 
 v.
 
 Superior Court, supra,
 
 54 Cal.3d 356.)