Filed 12/26/25  P. v. Sanchez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>RAY ANTHONY SANCHEZ,<br><br>        Defendant and Appellant. | F088440<br><br>(Super. Ct. No. DF016978A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Tiffany Organ-Bowles, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2024, defendant Ray Anthony Sanchez was convicted by jury of one count of making criminal threats against his former girlfriend. (Pen. Code, § 422, subd. (a).)[1] In a bifurcated proceeding, the trial court found that defendant had prior convictions from 2006 for attempted murder (§§ 664/187, subd. (a)), and from 2016 for active participation in a criminal street gang (§ 186.22, subd. (a)), for purposes of Three Strikes law sentencing (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and prior serious felony conviction enhancements (§ 667, subd. (a)(1)). The trial court also found true allegations that "defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness," and "defendant has served a prior term in prison or county jail under section 1170[, subdivision ](h)," but found not true the allegation that "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(b)(2)–(3), (a)(1).)

At the sentencing hearing, the trial court denied defendant's motion to strike one or both of his prior convictions under *Romero*[2] and sentenced him to 25 years to life, with an additional five years for a prior felony conviction enhancement.

Defendant filed a timely notice of appeal. He claims the trial court abused its discretion when it denied his motion to preclude a witness from testifying as a discovery sanction and when it denied his *Romero* motion.

He also claims, in supplemental briefing, entitlement to relief from the court's prior strike and enhancement allegation findings based on his 2016 gang offense conviction in light of Assembly Bill No. 333, which altered elements under the gang

---

[1]    All undesignated statutory references are to the Penal Code. Section 422 was amended, effective January 1, 2026, but those changes are not relevant to the issues raised in this appeal. (Assem. Bill No. 352 (2025–2026 Reg. Sess.).)

[2]    *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

statute to heighten the showing required for a conviction or enhancement finding.[3] (Assem. Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333).)

The People dispute any entitlement to relief.

We reject defendant's claim that the trial court abused its discretion when it denied his motion to exclude witness testimony as a discovery sanction. However, in light of the California Supreme Court's recent decision in *Fletcher*, we vacate the trial court's findings that defendant's 2016 conviction for violating section 186.22, subdivision (a), constituted a prior serious felony conviction for purposes of Three Strikes sentencing and imposing a prior serious felony conviction enhancement. (*People v. Fletcher* (2025) 18 Cal.5th 576, 583 (*Fletcher*).) Defendant's sentence is vacated and this matter is remanded for further proceedings consistent with this opinion. This renders defendant's *Romero* claim moot and we do not reach it. Except as modified, judgment is affirmed.

## FACTUAL SUMMARY

Defendant and U.M. were friends from high school. More than 15 years later, they began dating after defendant was released from prison. He moved in with U.M. and her children, and they remained a couple for one to two years. During their relationship, defendant became controlling, possessive, and "a scary person." In January 2021, they married, which U.M. testified was against her will and due to defendant threatening her.[4] In February, U.M. broke off the relationship. Defendant refused to move out after U.M. ended things, so he was still in the house in February and March, but they were no longer together.

---

[3]    After filing the supplemental opening brief, defendant's appellate counsel requested to expand appointment of counsel to include filing a petition for writ habeas corpus challenging defendant's 2016 convictions in case No. F074329 based on ineffective assistance of counsel. In a separate order issued concurrently with this opinion, we denied the motion.

[4]    All further dates are from the year 2021 unless otherwise noted.

On March 25, defendant removed U.M.'s home surveillance cameras, broke her vacuum cleaner, bleached her clothes, threw food everywhere and shot a bullet through her television. He texted her photos of the damage and she saw the damage herself when she returned the next day to pick up some clothes. She was terrified and felt her life was threatened.

On April 9, U.M. received a call from an unknown number while she was at work. She answered and the caller was defendant, who was angry. He told her he was coming for her and her body was going to end up in a trash can, which she interpreted as a threat to kill her. She hung up and called police. Officer Nino spoke with U.M. over the phone. She reported criminal threats by her ex-boyfriend and requested action be taken. She told Nino defendant became argumentative when they were talking; he asked personal, intrusive questions; and he told U.M. her body was going to end up in a trash can.

On the night of April 23, defendant showed up at U.M.'s house in a hat and mask. He wanted her to come outside, but she refused and then went to stay with her mother. At around 7:00 p.m. on April 24, while at her mother's house, U.M. received a call from an unknown number. She answered and the caller was defendant. He was upset and told her he was going to find her, or he knew where she was, and he was going to put her in a dark room and then put her body in a trash can.[5] U.M. interpreted his statement as a threat to kill her, and she hung up and called 911. In the recorded call, which was played for the jury, U.M. told the dispatcher her ex-boyfriend just called and threatened to kill her.

Officer Ortega, with the Delano Police Department, responded to U.M.'s mother's house following the 911 call. U.M. reported she and defendant had been separated for two months; he called from an unknown number; and he said he was going to put her in a

---

[5]     The charge of criminal threats was based on this incident. The other incidents were admitted under Evidence Code sections 1101, subdivision (b), and 1109.

4.

dark room, put her body in a bag, and put the bag in a garbage can. U.M. told Ortega defendant had previously threatened her and she was going to get a restraining order. Ortega did not follow up with U.M. regarding a restraining order, but she was aware U.M. had reported to the Tulare Police Department that defendant showed up at U.M.'s residence the night before, unannounced.

U.M.'s mother, M.M., testified she was with U.M. when defendant called on April 24. M.M. could hear the phone call and she recognized defendant's voice. Defendant told U.M. he was going to put her in a dark room and throw her in the trash when he was done with her. U.M. was very upset and crying.

U.M. also testified that defendant had been violent toward her, but she never reported it to the police. Officers Ortega and Nino stated that U.M. did not report to them any physical domestic violence.

Jurors saw several text messages from defendant to U.M. that U.M. interpreted as threats, and jurors saw a photo of a tattoo on his hand, which consisted of "R.I.P." above U.M.'s name. U.M. testified he added R.I.P. after they broke up and she interpreted it as a death threat.

## DISCUSSION

## I. Denial of Motion to Exclude M.M.'s Testimony as a Discovery Sanction

### A. Procedural Background

Prior to jury selection, U.M. testified at an Evidence Code section 402 hearing to determine the admissibility of the prior incidents involving defendant. On the morning of that hearing, U.M.'s mother, M.M., informed the prosecutor she had information about the case, which the prosecutor was previously unaware of. The police report mentioned the incident underlying the charge against defendant occurred at M.M.'s house, but M.M. was not interviewed by police, there was no indication in the report that she was home at the time, and U.M. never mentioned M.M. heard the call. Although defense counsel neither claimed a willful discovery violation by the prosecutor nor identified any

5.

prejudice, he argued lack of due diligence and requested M.M.'s potential testimony be excluded as a sanction for the untimely disclosure.

The trial court took the matter under submission and then denied defendant's request to preclude M.M. from testifying. The court found no "malfeasance" on the part of the prosecution or law enforcement, and concluded there was no indication in the record either that M.M. was present when U.M.'s report was taken or that M.M. was a witness.

On appeal, defendant claims the trial court erred in denying his motion to exclude M.M.'s testimony. He argues the error was prejudicial because he had "to contend with two percipient witnesses rather than [one] to the alleged crime, with less than a day to prepare for [M.M.'s] cross-examination," and without her testimony, some jurors would have had reasonable doubt about his guilt.

## B.    Legal Principles

"Section 1054 et seq. govern discovery in criminal cases and aim at flushing out the truth early and avoiding the element of surprise (on both sides) in criminal trials. '"The purpose of section 1054 et seq. is to promote ascertainment of truth by liberal discovery rules which allow parties to obtain information in order to prepare their cases and reduce the chance of surprise at trial. [Citation.] Reciprocal discovery is intended to protect the public interest in a full and truthful disclosure of critical facts, to promote the People's interest in preventing a last minute defense, and to reduce the risk of judgments based on incomplete testimony."'" (*People v. Hughes* (2020) 50 Cal.App.5th 257, 278 (*Hughes*), quoting *Thompson v. Superior Court* (1997) 53 Cal.App.4th 480, 487.)

Relevant to the claim in this case, section 1054.1 requires the prosecutor to disclose "names and addresses of persons the prosecutor intends to call as witnesses at trial" (§ 1054.1, subd. (a)), if "in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies" (§ 1054.1). "Upon a showing that a party has not complied with Section 1054.1 or

6.

1054.3 and upon a showing that the moving party complied with the informal discovery procedure provided in this subdivision, a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.5, subd. (b).) However, "The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted." (*Id.*, subd. (c).)

"The trial court possesses the discretion to determine what sanction is appropriate to ensure a fair trial" (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 466 (*Mora and Rangel*)), and we review the trial court's ruling for abuse of discretion (*ibid.*). "A reviewing court may not substitute its judgment for that of the trial judge, and discretion is abused only if the trial court's ruling exceeds the bounds of reason, all of the circumstances being considered." (*Hughes, supra*, 50 Cal.App.5th at p. 283, citing *People v. Giminez* (1975) 14 Cal.3d 68, 72.) "To prevail on a claim alleging a violation of discovery statutes, an appellant must show there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different." (*Mora and Rangel, supra*, at p. 467.)

### C. Analysis

#### 1. No Evidence of Willfulness or Prejudice

Defendant claims the trial court erred when it denied his request to exclude M.M.'s testimony as a discovery sanction, but "absent a showing of significant prejudice and willful conduct, exclusion of testimony is not appropriate as punishment." (*People v. Gonzales* (1994) 22 Cal.App.4th 1744, 1758 (*Gonzales*); accord, *People v. Jordan* (2003) 108 Cal.App.4th 349, 358.) In this case, there is no evidence that the delay in disclosing M.M. as a witness was willful. To the contrary, the record reflects the prosecutor

7.

disclosed the information that M.M. witnessed the phone call as soon as she became aware of it prior to the evidentiary hearing. In the trial court, defendant conceded the failure was not willful and he does not claim otherwise on appeal. Instead, as in the trial court, he argues the prosecutor did not exercise due diligence. The trial court concluded there was no willful discovery violation, however, and nothing in the record suggests this finding was an abuse of discretion. (*Hughes, supra*, 50 Cal.App.5th at p. 283.)

Furthermore, defendant does not identify any articulable prejudice. Notably, the only sanction defendant sought in the trial court was the exclusion of M.M.'s testimony and he did not argue the late disclosure was prejudicial. This was not a complex case. U.M. testified that defendant called her and threatened to put her in a dark room and then put her body in a trash can. The jury heard U.M.'s 911 call, during which she reported that defendant called and threatened to kill her; and the officer who took U.M.'s report testified that she said defendant called and told her he was going to put her in a dark room, put her body in a bag, and put the bag in a garbage can.

M.M. testified that she overheard the phone call from defendant and heard him threaten to put U.M. in a dark room and then in a trash can when he was done. This testimony corroborated U.M.'s version of events, but it did not add anything new or unexpected to the evidence and, critically, we are unable to discern any specific prejudice to the defense resulting from the late disclosure of M.M. as a witness. The fact that defendant had to cross-examine two witnesses rather than one on the subject of the phone call does not constitute prejudice attributable to the late disclosure, let alone "substantial and irremediable" prejudice. (*Gonzales, supra*, 22 Cal.App.4th at p. 1757.)

### 2.    *Jackson* is Inapt

Defendant relies on *Jackson* for support, but we find that decision readily distinguishable. (*People v. Jackson* (1993) 15 Cal.App.4th 1197.) In *Jackson*, the Court of Appeal affirmed the trial court's order precluding introduction of an exculpatory statement by a witness who could not be located, where the statement was obtained three

months before trial but not disclosed until after the prosecution rested. (*Id.* at pp. 1200–1201.) The appellate court explained, "Here, because the testimony was allegedly exculpatory, the trial court refused to believe defense counsel did not seriously consider calling the witness until moments before he did. Even if withholding the identity of the witness were not willful, lesser sanctions would not have been adequate. Immediate disclosure or contempt of counsel would have been insufficient, because the People would not have had a meaningful opportunity to rebut or impeach the statement. Similarly, a continuance would have been inadequate, because the declarant's whereabouts were unknown and thus her unavailability precluded the People from cross-examining her. The People would have been unduly prejudiced by admitting the testimony without an opportunity for cross-examination, and the integrity of the adversary process would have been compromised as parties with little to lose would be encouraged to not comply with pretrial discovery rules." (*Id.* at p. 1203.)

Here, as discussed, there is no evidence the prosecutor knew M.M. was a percipient witness to the threat, but delayed disclosing the information until just prior to jury selection. The trial court concluded the delay in disclosing M.M. as a witness was *not* willful and we find no support in the record for defendant's claim that this conclusion was an abuse of discretion. M.M.'s testimony was brief and focused on the threat allegedly made on April 24, and defendant had the opportunity to cross-examine M.M. Counsel did not identify any prejudice to the defense flowing from the belated disclosure, but in any event, nothing about these circumstances suggests this was a situation with no adequate remedy other than witness preclusion. (See *People v. Walton* (1996) 42 Cal.App.4th 1004, 1017 [no abuse of discretion in letting late-disclosed witness testify; "If appellant required additional time to prepare for the witness's testimony he neglected to request it."], disapproved on another ground by *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3.)

We find no error in the trial court's ruling and, therefore, we do not address defendant's claim that the alleged error was prejudicial. (See *Mora and Rangel, supra*, 5 Cal.5th at p. 467.)

## II. Entitlement to Relief From Prior Conviction Findings Given Assembly Bill 333's Amendment of Section 186.22

"The Legislature enacted Assembly Bill 333[, effective January 1, 2022,] 'to narrow the definition of criminal street gang in order to focus on "true gang-related crimes," having determined that "in practice the original definition of a criminal street gang was not narrowly focused on punishing true gang-related crimes." [Citation.] … [T]he Legislature in Assembly Bill 333 "redefined the term 'criminal street gang' so as to truly target the population of criminals for which an enhanced punishment is warranted."'" (*Fletcher, supra*, 18 Cal.5th at p. 586, quoting & citing *People v. Rojas* (2023) 15 Cal.5th 561, 576 & Assem. Com. on Public Safety, Analysis of Assem. Bill 333, as amended Mar. 30, 2021, p. 4 [Assem. Bill 333 ""'ensur[es] gang enhancements are only used when necessary and fair"'"].) "As noted, Assembly Bill 333 made significant changes to the elements of gang offenses and enhancements as defined in section 186.22." (*Fletcher, supra*, at p. 586, citing *People v. Tran* (2022) 13 Cal.5th 1169, 1206.)

Defendant was convicted of making criminal threats in this case more than two years after the amendment of section 186.22, but for purposes of sentencing under the Three Strikes law and imposition of a prior serious felony conviction enhancement, the trial court found true that in 2016, defendant was convicted of active participation in a criminal street gang, in violation of section 186.22, subdivision (a), which is a serious felony. (§§ 667, subd. (d)(1), 1192.7, subd. (c)(28).) Courts of Appeal were split on whether prosecutors were required to prove prior gang convictions under section 186.22 as amended by Assembly Bill 333 or whether it was sufficient to show a conviction under the statute in effect at the time of the prior conviction. (*Fletcher, supra*, 18 Cal.5th at

p. 583.)  Based on this split of authority, defendant claimed entitlement to relief from the court's findings related to his 2016 gang conviction because the conviction must meet the elements of section 186.22, subdivision (a), as amended by Assembly Bill 333.  The People disputed any entitlement to relief.

In *Fletcher*, which was decided between the filing of the People's opening brief and defendant's reply brief, the California Supreme Court resolved the split of authority in defendant's favor and held that "where a defendant has suffered a conviction under the prior version of section 186.22, Assembly Bill 333 applies to the determination of whether the conviction qualifies as a prior serious felony conviction under subdivision (c)(28) of section 1192.7 for purposes of the Three Strikes law and prior serious felony enhancements." (*Fletcher, supra*, 18 Cal.5th at p. 583.)  Therefore, in accordance with *Fletcher*, we vacate the trial court's findings that defendant's 2016 conviction for violating section 186.22 subdivision (a), is a serious felony within the meaning of the Three Strikes law and for purposes of imposing a prior serious felony conviction enhancement.  (*Fletcher, supra*, at p. 608.)  On remand, the People may elect to retry the prior conviction allegations under section 186.22, subdivision (a), as amended by Assembly Bill 333.  (*Fletcher, supra*, at p. 608.)

**DISPOSITION**

The trial court's findings that defendant's 2016 conviction for violating section 186.22, subdivision (a), constitutes a prior serious felony conviction within the meaning of the Three Strikes law and for the purpose of imposing a prior serious felony conviction enhancement are vacated.  Defendant's sentence is vacated and this matter is

11.

remanded for further proceedings, to include the option to retry the allegations and for resentencing.  In all other respects, defendant's judgment is affirmed.


                                                                     MEEHAN, J.

WE CONCUR:


FRANSON, Acting P. J.


SNAUFFER, J.

12.